[No. E030010. Fourth Dist., Div. Two. July 11, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE ROMERO, Defendant and Appellant.

**COUNSEL**

David L. Tucker, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, J.**—We publish this case to underscore our disagreement with the Ninth Circuit's recent decision in *Brown v. Mayle* (9th Cir. 2002) 283 F.3d 1019. In that decision, the Ninth Circuit Court of Appeals held "that the California Court of Appeal decisions upholding 25-year-to-life sentences for petty theft were contrary to and unreasonable applications of clearly established Supreme Court law." (*Id.* at p. 1020.) Although the Ninth Circuit applies what it characterizes as the more stringent reasonable-application standard of the Supreme Court law as stated in *Andrade v. Attorney*

General of State of California (9th Cir. 2001) 270 F.3d 743,[1] it does so in a manner which would invalidate use of petty theft with a prior as a third strike, regardless of defendant's prior criminal record.

■ We do not concede that all of the California decisions affirming 25-year-to-life sentences, under California's "Three Strikes" law, for felony petty theft, including our opinion today, are "contrary to"[2] or involve an "unreasonable application"[3] of United States Supreme Court precedent as to justify a writ of habeas corpus, under 28 United States Code section 2254.[4] Our appellate courts have properly considered a defendant's recidivism, and have properly followed "the required Supreme Court analysis as enunciated in *Rummel v. Estelle*, 445 U.S. 263 [100 S.Ct. 1133, 63 L.Ed.2d 382] (1980), *Solem v. Helm*, 463 U.S. 277 [103 S.Ct. 3001, 77 L.Ed.2d 637] (1983), and *Harmelin v. Michigan*, 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836] (1991)." (*Brown v. Mayle, supra,* 283 F.3d 1019, 1025.)

Since we do not agree with *Brown*'s expansive and creative reading of the Supreme Court cases, we reject defendant's contention that his three strikes sentence for stealing a magazine constitutes cruel and unusual punishment.

### PROCEDURAL BACKGROUND AND FACTS

Lawrence Romero appeals his sentence of 25 years to life, under Penal Code section 667, subdivision (e),[5] on the ground that it constitutes cruel and unusual punishment in violation of the federal or state Constitution.

---

[1]Certiorari granted *sub nom. Lockyer v. Andrade* (2002) __ U.S. __ [122 S.Ct. 1434, 152 L.Ed.2d 379].

[2]"A state court's decision can be 'contrary to' federal law either 1) if it fails to apply the correct controlling authority, or 2) if it applies the controlling authority to a case involving facts 'materially indistinguishable' from those in a controlling case, but nonetheless reaches a different result. [Citation.]" (*Van Tran v. Lindsey* (9th Cir. 2000) 212 F.3d 1143, 1150, citing *Williams v. Taylor* (2000) 529 U.S. 362, 405-409 [120 S.Ct. 1495, 1519-1521, 146 L.Ed.2d 389].)

[3]"A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. [Citation.]" (*Van Tran v. Lindsey, supra,* 212 F.3d at p. 1150, citing *Williams v. Taylor, supra,* 529 U.S. at pp. 405-409 [120 S.Ct. at pp. 1519-1521].)

[4]"An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim . . . [¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." (28 U.S.C. § 2254(d)(1).)

[5]Unless otherwise indicated, all further statutory references are to the Penal Code. "If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate

Defendant also contends that the trial court abused its discretion when it refused to dismiss a prior strike.

On November 9, 1999, two deputy sheriffs arrested the 38-year-old defendant for stealing a $3 magazine from Jackman Adult Bookstore. A subsequent search of defendant revealed "a glass pipe" and "a cellophane plastic . . . bag containing a white powdery rock substance." The district attorney charged defendant with the following: (1) felony petty theft, in violation of section 666; (2) possession of a controlled substance, in violation of Health and Safety Code section 11377, subdivision (a); and (3) possession of a smoking device, in violation of Health and Safety Code section 11364. The information also alleged defendant had two prior felony convictions pursuant to section 667, subdivisions (b) through (i).[6]

The jury found defendant guilty of (1) felony petty theft and (2) possession of a smoking device. A mistrial was declared as to count 2, possession of a controlled substance. The court found defendant had sustained two prior felony convictions pursuant to section 667, subdivisions (b) through (i).

Defendant filed a motion with the trial court requesting it to dismiss one of his prior felony convictions, pursuant to the court's discretionary power under section 1385. The court denied the motion. The court stated, "I don't see anything in Mr. Romero's life that would lead me to think that he is outside of the spirit of the three-strikes law." For the offense of felony petty theft, the court ordered defendant to serve, under section 667, subdivision (e), 25 years to life.

In sentencing defendant, the trial court properly considered defendant's recidivism. Since the age of maturity, defendant has been in constant contact with the criminal system. In September of 1981, at the age of 19, defendant was convicted of petty theft and given 24 months' probation and one day in jail. In 1983, defendant was convicted of first degree burglary.[7] The probation officer recommended defendant "be sentenced to . . . [p]rison for the . . . term of two (2) years," but defendant was given 36 months' probation and 180 days in jail. Defendant violated probation, and was sentenced to two

term of life imprisonment with a minimum term of . . . : [¶] . . . [¶] . . . 25 years." (§ 667, subd. (e)(2)(A)(ii).)

[6]"[F]or the purposes of [section 667,] subdivisions (b) to (i) . . . a prior conviction of a felony shall be defined as: [¶] (1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state." (§ 667, subd. (d)(1).)

[7]First degree burglary is punishable "by imprisonment in the state prison for two, four, or six years." (§ 461.)

years in state prison. In 1987, defendant was paroled, violated parole and was forced to finish the remainder of his sentence.

In 1987, defendant was convicted of hit-and-run, battery on a peace officer and obstructing a peace officer. He was given 180 days in county jail.

In 1990, defendant was convicted of lewd conduct with a child under age 14.[8] The probation officer recommended defendant be sentenced to serve six years in state prison, but defendant was given probation and a jail sentence of 270 days. He violated probation and was sentenced to six years in state prison. Defendant was paroled three times, and each time violated parole.

## ISSUE

Does defendant's sentence of 25 years to life, under California's Three Strikes law, for stealing a magazine constitute cruel and unusual punishment in violation of the federal or state Constitution when the defendant has the requisite prior convictions, which include first degree burglary and lewd conduct with a child under age 14?

We hold that defendant's sentence of 25 years to life, under California's Three Strikes law, for stealing a magazine does not constitute cruel and unusual punishment in violation of the federal or state Constitution. As noted above, we disagree with the recent Ninth Circuit decisions that purport to eliminate third strike sentencing when the third strike is felony petty theft.

## DISCUSSION

### I. *Application of the Eighth Amendment.*

#### A. *Does the Eighth Amendment Contain a Proportionality Guarantee?*

The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (U.S. Const., 8th Amend.) Defendant contends that the right against cruel and unusual punishment, under the federal

---

[8]"Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." (§ 288, subd. (a).)

Constitution, "includes a requirement of proportionality." Whether the Eighth Amendment contains a proportionality guarantee has generated much debate amongst the justices of the Supreme Court. An independent review of the relevant Supreme Court cases will not only assist us in our determination of this issue and case, but also demonstrate that the California appellate court decisions that were reversed in *Andrade* and *Brown* were reasonable and supported by relevant decisions of the United States Supreme Court. The Supreme Court cases that are instructive on this matter are *Rummel v. Estelle, supra,* 445 U.S. 263, *Solem v. Helm, supra,* 463 U.S. 277, and *Harmelin v. Michigan, supra,* 501 U.S. 957.

In *Rummel,* the defendant was convicted of obtaining $120.75 by false pretenses and sentenced to life imprisonment, under Texas's recidivist statute. (*Rummel v. Estelle, supra,* 445 U.S. at pp. 265-266 [100 S.Ct. at pp. 1134-1135].) Rummel would become eligible for parole "in as little as 12 years." (*Id.* at p. 280 [100 S.Ct. at p. 1142].) The defendant had previously been convicted of "fraudulent use of a credit card to obtain $80 worth of goods or services" and "passing a forged check in the amount of $28.36." (*Id.* at pp. 265-266 [100 S.Ct. at pp. 1134-1135], fn. omitted.) The Supreme Court acknowledged that it had "on occasion stated that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime," but held that Rummel's sentence did not constitute cruel and unusual punishment under the Eighth Amendment. (*Id.* at pp. 271, 285 [100 S.Ct. at pp. 1137-1138, 1145].)

The Supreme Court reasoned that "the interest of the State of Texas here is not simply that of making criminal the unlawful acquisition of another person's property; it is in addition the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." (*Rummel v. Estelle, supra,* 445 U.S. at p. 276 [100 S.Ct. at p. 1140].) Under Texas's recidivist statute, "a recidivist must twice demonstrate that conviction and actual imprisonment do not deter him from returning to crime once he is released." (*Id.* at p. 278 [100 S.Ct. at p. 1141].) The Supreme Court also noted that "because parole is 'an established variation on imprisonment of convicted criminals,' [citation], a proper assessment of Texas' treatment of Rummel could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life." (*Id.* at pp. 280-281 [100 S.Ct. at pp. 1142-1143], quoting *Morrissey v. Brewer* (1972) 408 U.S. 471, 477 [92 S.Ct. 2593, 2598, 33 L.Ed.2d 484].)

In *Solem,* "Helm was charged with uttering a 'no account' check for $100." (*Solem v. Helm, supra,* 463 U.S. at p. 281 [103 S.Ct. at p. 3005].)

After Helm pled guilty, the court sentenced him to life imprisonment without the possibility of parole, under South Dakota's recidivist statute. (*Id.* at pp. 282-283 [103 S.Ct. at pp. 3005-3006].) Helm had previously been convicted of six nonviolent felonies.[9] (*Id.* at p. 279 [103 S.Ct. at p. 3004].) The Supreme Court stated, "as a matter of principle . . . a criminal sentence must be proportionate to the crime for which the defendant has been convicted." (*Id.* at p. 290 [103 S.Ct. at p. 3009].) The Supreme Court adopted a tripartite test[10] to guide its review of proportionality. (*Id.* at pp. 290-292 [103 S.Ct. at pp. 3009-3011].) Applying the tripartite test, the Supreme Court held that Helm's sentence was "significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment." (*Id.* at p. 303 [103 S.Ct. at pp. 3016-3017], fn. omitted.)

The Supreme Court realized that "a State is justified in punishing a recidivist more severely than it punishes a first offender," but noted that Helm's status could not be viewed in the abstract. (*Solem v. Helm, supra,* 463 U.S. at p. 296 [103 S.Ct. at p. 3013].) "His prior offenses, although classified as felonies, were all relatively minor. All were nonviolent and none was a crime against a person." (*Id.* at pp. 296-297 [103 S.Ct. at p. 3013], fn. omitted.) The Supreme Court distinguished *Rummel v. Estelle, supra,* 445 U.S. 263, on the fact that South Dakota's recidivist statute forbids the possibility of parole. (*Solem,* at pp. 301-303 [103 S.Ct. at pp. 3015-3017].)

Since *Solem,* the Supreme Court has spoken on the issue of proportionality and, in doing so, has called into question the validity of *Solem.* In *Harmelin,* Justice Scalia delivered the opinion for the court, holding that the imposition of a life sentence without possibility of parole for possession of 650 grams of cocaine did not constitute cruel and unusual punishment. (*Harmelin v. Michigan, supra,* 501 U.S. at pp. 961, 994-996 [111 S.Ct. at pp. 2684, 2701-2702] (lead opn. of Scalia, J.).) The Supreme Court arrived at a disposition of the case, but five separate opinions were filed discussing the issue of proportionality. (*Id.* at pp. 961-1029 [111 S.Ct. at pp. 2684-2720].)

Justice Scalia, joined by Chief Justice Rehnquist, stated, "We conclude from this examination that *Solem* was simply wrong; the Eighth Amendment

---

[9]"In 1964, 1966, and 1969 Helm was convicted of third-degree burglary. In 1972 he was convicted of obtaining money under false pretenses. In 1973 he was convicted of grand larceny. And in 1975 he was convicted of third-offense driving while intoxicated." (*Solem v. Helm, supra,* 463 U.S. at pp. 279-280 [103 S.Ct. at pp. 3004-3005], fns. omitted.)

[10]"In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Solem v. Helm, supra,* 463 U.S. at p. 292 [103 S.Ct. at p. 3011].)

contains no proportionality guarantee." (*Harmelin v. Michigan, supra,* 501 U.S. at p. 965 [111 S.Ct. at p. 2686] (lead opn. of Scalia, J.).) Justice Kennedy, joined by Justices O'Connor and Souter, stated, "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime. [Citation.]" (*Id.* at p. 1001 [111 S.Ct. at p. 2705] (conc. opn. of Kennedy, J.), citing *Solem v. Helm, supra,* 463 U.S. at pp. 288, 303 [103 S.Ct. at pp. 3008-3009, 3016-3017].) Justice White, joined by Justices Blackmun and Stevens, stated, "Because there is no justification for overruling or limiting *Solem,* it remains to apply that case's proportionality analysis to the sentence imposed on petitioner."[11] (*Harmelin,* at p. 1021 [111 S.Ct. at p. 2716] (dis. opn. of White, J.).)

Last year, the Ninth Circuit attempted to reconcile the Supreme Court cases on proportionality. (*Andrade v. Attorney General of State of California, supra,* 270 F.3d at pp. 754-759, cert. granted *sub nom. Lockyer v. Andrade, supra,* __ U.S. __ [122 S.Ct. 1434].) In *Andrade,* the Ninth Circuit held that the "California Court of Appeal unreasonably applied clearly established United States Supreme Court precedent when it held" that a 50-year-to-life sentence for two petty thefts did not violate the Eighth Amendment. (*Andrade, supra,* 270 F.3d at p. 747.) The Ninth Circuit concluded "that *Solem* remains good law after *Harmelin,* recognizing that we need not consider *Solem's* second and third factors if we conclude under the first factor that a defendant's sentence does not raise an inference of gross disproportionality to the crime. [Citation.]" (*Id.* at p. 758, citing *Harmelin v. Michigan, supra,* 501 U.S. at p. 1005 [111 S.Ct. at p. 2707] (conc. opn. of Kennedy, J.).)

Due to the harshness of the penalty and gravity of the offense, the Ninth Circuit opined that Andrade's sentence gave rise to an inference of gross disproportionality. (*Andrade v. Attorney General of State of California, supra,* 270 F.3d at p. 761, cert. granted *sub nom. Lockyer v. Andrade, supra,* __ U.S. __ [122 S.Ct. 1434].) The "unavailability of parole for a half century" made Andrade's "sentence . . . the functional equivalent of the sentences at issue in *Solem* and *Harmelin*—life in prison without the possibility of parole." (*Andrade, supra,* 270 F.3d at pp. 758-759.) Andrade was 37 years of age at the time of sentencing. (*Id.* at p. 759.) He would have to survive an additional 10 years beyond the average life expectancy of 77[12] in order to

---

[11] Justice Marshall filed a dissenting opinion. Justice Stevens, joined by Justice Blackmun, also filed a dissenting opinion. (*Harmelin v. Michigan, supra,* 501 U.S. at pp. 1028-1029 [111 S.Ct. at pp. 2719-2720] (dis. opn. of Stevens, J.).)

[12] "The life expectancy of a 37-year-old American male is 77 years." (*Andrade v. Attorney General of State of California, supra,* 270 F.3d at p. 759, cert. granted *sub nom. Lockyer v.*

become eligible for parole. (*Ibid.*) The Ninth Circuit also opined that "Andrade's crimes did not pose a 'grave harm to society' . . . ." (*Ibid.*)

More recently in *Brown,* the Ninth Circuit extended *Andrade* when it held "that the California Court of Appeal decisions upholding 25-year-to-life sentences for petty theft were contrary to and unreasonable applications of clearly established Supreme Court law." (*Brown v. Mayle, supra,* 283 F.3d 1019, 1020.) As can be observed from the various opinions in *Harmelin,* the Supreme Court law is not "clearly established" within the meaning of 28 United States Code section 2254.

### B. *Defendant's Sentence Does Not Raise an Inference of Gross Disproportionality.*

 For the sake of argument, we will accept and apply the grossly disproportionate test. If defendant's sentence does not give rise to an inference of gross disproportionality, we need not conduct an intrajurisdictional and interjurisdictional analysis. (*Andrade v. Attorney General of State of California, supra,* 270 F.3d at p. 758, cert. granted *sub nom. Lockyer v. Andrade, supra,* __ U.S. __ [122 S.Ct. 1434], citing *Harmelin v. Michigan, supra,* 501 U.S. at p. 1005 [111 S.Ct. at p. 2707] (conc. opn. of Kennedy, J.).) "A proper analysis of gross disproportionality requires a comparison to all three cases: *Rummel, Solem,* and *Harmelin.*" (*Andrade v. Attorney General of State of California, supra,* 270 F.3d at p. 766.)

Similar to *Rummel,* California's recidivist sentence of 25 years to life is inapplicable unless the criminal defendant has two prior felony convictions as defined in section 667, subdivision (d). California's recidivist statute does not require actual imprisonment,[13] but defendant has served a two-year and six-year state prison term for his prior felony convictions. Defendant, like Rummel, will be eligible for parole. Although defendant will not be eligible for parole until he has served a minimum sentence of 25 years,[14] this does not compel a different holding than *Rummel.* Defendant's prior felony convictions are much more serious than Rummel's.

Unlike *Solem,* California's recidivist statute does not bar the possibility of parole. (§ 667, subds. (b)-(i).) Unlike Helm's nonviolent felony convictions, defendant's 1990 conviction for lewd conduct with a child under the age of

---

*Andrade, supra,* __ U.S. __ [122 S.Ct. 1434], citing National Center for Health Statistics, Centers for Disease Control, National Vital Statistics Reps. (Dec. 13, 1999), table 2, vol. 47, No. 28.)

[13]See section 667, subdivision (d)(1).

[14]A third strike felon cannot have his minimum term of 25 years reduced with good time credits. (*In re Cervera* (2001) 24 Cal.4th 1073, 1076 [103 Cal.Rptr.2d 762, 16 P.3d 176].)

14 was a violent crime,[15] the 1990 conviction being a crime committed directly against a person, i.e., a child. While Helm's property crimes may affect the wallets of consumers and retailers, defendant's sex crime affects the mental health of the victim.[16] Under California's Three Strikes law, defendant's first degree burglary conviction constitutes a serious crime.[17]

### Justice Kennedy's Opinion in Harmelin

The facts of *Harmelin* are inapposite,[18] but the underlying principles and rationale articulated by Justice Kennedy are relevant to defendant's Eighth Amendment challenge. In *Harmelin*, Justice Kennedy enumerated several principles that "give content to the uses and limits of proportionality review." (*Harmelin v. Michigan, supra,* 501 U.S at p. 998 [111 S.Ct. at p. 2703] (conc. opn. of Kennedy, J.).) First, " 'reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.' [Citations.]" (*Id.* at p. 999 [111 S.Ct. at pp. 2703-2704] (conc. opn. of Kennedy, J.), quoting *Solem v. Helm, supra,* 463 U.S. at p. 290 [103 S.Ct. at p. 3009].) ▇ California's Three Strikes law is entitled to great deference, because the Legislature enacted the law and the people of California approved the legislation with the passage of Proposition 184.[19]

The Legislature has provided trial courts and district attorneys substantial discretion to ensure that the three strikes sentence fits the criminal. For example, the district attorney has the discretion to charge petty theft with a prior as a misdemeanor or felony. Upon conviction, the trial court has the discretion "to treat the offense as either a misdemeanor or a felony." (*People v. Bouzas* (1991) 53 Cal.3d 467, 471 [279 Cal.Rptr. 847, 807 P.2d 1076].) The district attorney "may move to dismiss or strike a prior felony conviction allegation in furtherance of justice pursuant to Section 1385 . . . ." (§ 667, subd. (f)(2).) The California Supreme Court in *People v. Superior Court (Romero)* extended this principle when it held that section 1385 allows a trial court, on its own motion, to strike a prior felony conviction in cases

---

[15]See section 667.5, subdivision (c)(6).

[16]The California Legislature enacted section 288, subdivision (d), which states, "the court shall consider the needs of the child victim and shall do whatever is necessary, within existing budgetary resources, and constitutionally permissible to prevent psychological harm to the child victim . . . ." (§ 288, subd. (d).)

[17]See section 1192.7, subdivision (c)(18).

[18]Harmelin's life sentence without the possibility of parole was imposed as the result of a single crime, possession of 672 grams of a controlled substance. (*Harmelin v. Michigan, supra,* 501 U.S. at p. 961 [111 S.Ct. at p. 2684] (lead opn. of Scalia, J.).) Unlike *Harmelin,* defendant and others similarly situated have been sentenced to life as a result of their repeated criminal acts.

[19]See *In re Cervera, supra,* 24 Cal.4th 1073, 1075.

brought under section 667, subdivisions (b) through (i). (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628].)

 Defendant contends that California has the most severe recidivist scheme in the nation. Justice Kennedy's second principle proposes "that the Eighth Amendment does not mandate adoption of any one penological theory. 'The principles which have guided criminal sentencing . . . have varied with the times.' [Citation.]" (*Harmelin v. Michigan, supra,* 501 U.S. at p. 999 [111 S.Ct. at p. 2704] (conc. opn. of Kennedy, J.), quoting *Payne v. Tennessee* (1991) 501 U.S. 808, 819 [111 S.Ct. 2597, 2605, 115 L.Ed.2d 720].) The Supreme Court has also stated, "Even were we to assume that the statute employed . . . was the most stringent found in the 50 States, that severity hardly would render [the] punishment 'grossly disproportionate' to [the] offenses or to the punishment . . . received in the other States." (*Rummel v. Estelle, supra,* 445 U.S at p. 281 [100 S.Ct. at p. 1143].) Justice Kennedy's third principle notes that "marked divergences . . . in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure." (*Harmelin v. Michigan, supra,* 501 U.S. at p. 999 [111 S.Ct. at p. 2704] (conc. opn. of Kennedy, J.).) Justice Kennedy's principles and rationale, as well as *Rummel* and *Solem,* compel a finding of proportionality in defendant's case.

### C. Andrade and Brown in Light of the Supreme Court Precedent.

The Ninth Circuit's recent decisions in *Brown* and *Andrade* seek to establish the principle that the punishment must be proportionate to the "triggering" felony. In *Brown,* the Ninth Circuit criticizes the California Court of Appeal's opinion for failing to consider "whether Brown's sentence was grossly disproportionate to the crime of petty theft for which he was convicted . . . ." (*Brown v. Mayle, supra,* 283 F.3d 1019, 1039.) The Ninth Circuit concludes that "Bray and Brown's sentences of life imprisonment with no possibility of parole for 25 years are grossly disproportionate to their respective crimes—stealing three videotapes and a steering wheel alarm— even in light of their criminal records." (*Id.* at p. 1040.) In *Andrade,* the Ninth Circuit opined that Andrade's prior criminal record did not dissipate the inference of gross disproportionality. (*Andrade v. Attorney General of State of California, supra,* 270 F.3d at p. 761, cert. granted *sub nom. Lockyer v. Andrade, supra,* __ U.S. __ [122 S.Ct. 1434].)

 Although lower federal court decisions are entitled to great weight, we are not bound by their decisions. (*People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) We choose not to follow *Brown* and

*Andrade*, because they ignore the salient teachings of the Supreme Court.
 A long line of Supreme Court cases have held that recidivism is a proper sentencing factor. (See *Solem v. Helm, supra,* 463 U.S. 277, 296 [103 S.Ct. 3001, 3012-3013]; *Rummel v. Estelle, supra,* 445 U.S. 263, 284 [100 S.Ct. 1133, 1144-1145]; *Gryger v. Burke* (1948) 334 U.S. 728, 732 [68 S.Ct. 1256, 1258, 92 L.Ed. 1683]; *McDonald v. Commonwealth of Massachusetts* (1901) 180 U.S. 311, 312 [21 S.Ct. 389, 390, 45 L.Ed. 542]; *Moore v. State of Missouri* (1895) 159 U.S. 673, 678 [16 S.Ct. 179, 181, 40 L.Ed. 301].)

*Rummel* contradicts *Andrade's* and *Brown's* assertions that the punishment must be proportional to the "triggering" felony. In *Rummel,* the Supreme Court states, "segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." (*Rummel v. Estelle, supra,* 445 U.S. at p. 284 [100 S.Ct. at p. 1145].) Supreme Court precedent teaches that when reviewing a recidivist sentence for proportionality, the recidivist sentence must be grossly disproportional to the criminal, not just the "triggering" felony. This is why *Andrade* and *Brown* are wrong.

Defendant's case is most analogous to *Rummel.* Given defendant's criminal history, including failure to comply with terms of parole, and due deference to the Legislature, defendant's sentence does not raise an inference of gross disproportionality when defendant's criminal history is considered.

II. *Application of California Constitution, Article I, Section 17.*

 "A sentence may violate the state constitutional ban on cruel and unusual punishment . . . if ' ". . . it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." ' [Citations.]

"In order to determine whether a particular punishment is disproportionate to the offense for which it is imposed, we conduct a three-pronged analysis. [Citations.] First, we examine the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society. A look at the nature of the offense includes a look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts. A look at the nature of the offender includes an inquiry into whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal

characteristics, and state of mind.' [Citation.] Next, we compare the challenged punishment with the punishment prescribed for more serious crimes in the same jurisdiction. And finally, the challenged punishment is compared with punishment for the same offense in other jurisdictions." (*People v. Thongvilay* (1998) 62 Cal.App.4th 71, 87-88 [72 Cal.Rptr.2d 738].)

■ Defendant contends that his sentence of 25 years to life for stealing a magazine, with two nonviolent felony convictions, was cruel and unusual punishment. As discussed in our Eighth Amendment analysis, defendant has improperly characterized his prior felony convictions. Defendant's record is far from impeccable on the issue of violence. Defendant's 1990 conviction for lewd conduct with a child under the age of 14 and 1987 conviction for battery on a peace officer demonstrate his violent character.

"[D]efendant's punishment was imposed because of his recidivism." (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338 [71 Cal.Rptr.2d 41].) "[S]ociety is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies. If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time. [Citation.]" (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1512 [84 Cal.Rptr.2d 638], citing *Rummel v. Estelle, supra,* 445 U.S. at pp. 284-285 [100 S.Ct. at pp. 1144-1145].) An overview of defendant's criminal record illustrates that neither increased penalties nor age has deterred him from committing more crimes.

At the age of 19, defendant was convicted of petty theft. He was given one day in jail and 24 months' probation. Less than two years later, at the age of 20, defendant was convicted of first degree burglary, and was given 180 days in jail and 36 months' probation. Defendant had his probation revoked and was sentenced to two years in state prison. He was paroled, violated parole, and had to finish his term.

At the age of 24, defendant was convicted of battery on a peace officer and was given 180 days in county jail. Less than three years later, at the age of 27, he was convicted of lewd conduct with a child under the age of 14. Defendant was given 270 days in jail and 60 months' probation. Defendant had his probation revoked and was sentenced to six years in state prison. He was paroled three times and each time violated parole.

The most recent offenses were for petty theft and possession of a smoking device. These offenses were committed at the age of 38, and after having served eight years in prison and one and three-quarter years in county jail. Defendant's sentence of 25 years to life is not so disproportionate as to shock the conscience.

The second prong of the *Lynch* analysis involves a comparison of the "challenged punishment with the punishment prescribed for more serious crimes in the same jurisdiction." (*People v. Thongvilay, supra,* 62 Cal.App.4th at p. 88.) Defendant compares his sentence with the statutory penalty for second degree murder. "However, as the court pointed out in *People v. Ayon* (1996) 46 Cal.App.4th 385, 400 [53 Cal.Rptr.2d 853], this step is inapposite to three strikes sentencing because it is a defendant's 'recidivism in combination with current crimes that places him under the three strikes law. Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [defendant's] punishment for his "offense," which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.' [Citation.]" (*People v. Cline, supra,* 60 Cal.App.4th 1327, 1338.)

As for the third prong, defendant's interjurisdictional comparison demonstrates that California's Three Strikes law is among the most severe recidivist schemes in the nation. "That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual. This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' [Citation.] Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct." (*People v. Martinez, supra,* 71 Cal.App.4th at p. 1516.)

Defendant's sentence of 25 years to life, under California's recidivist statute, for felony petty theft does not constitute cruel or unusual punishment.

## III. *Trial Court's Refusal to Strike One of Defendant's Prior Convictions.*

 Did the trial court abuse its discretion when it denied defendant's request to dismiss a prior strike in the interest of justice?

 "Trial courts retain the power to dismiss prior strikes in the interest of justice under section 1385. [Citation.] In exercising their discretion under section 1385, trial courts must consider both the defendant's constitutional rights and society's interests, as represented by the People. [Citation.]" (*People v. Cline, supra,* 60 Cal.App.4th at p. 1337.) This requires the court to consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be

deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

■ A trial court's decision to strike prior felony convictions is subject to review under the "deferential abuse of discretion standard. Under that standard an appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance. [Citation.]" (*People v. Myers* (1999) 69 Cal.App.4th 305, 309-310 [81 Cal.Rptr.2d 564].)

■ Defendant places great emphasis on the fact that the "triggering" offense was a nonviolent petty shoplifting offense. We cannot, however, ignore defendant's background, character, or seriousness of his crimes. Defendant has been convicted of a violent felony, a serious felony, and four misdemeanors. He violated parole four times and had probation revoked twice.

Defendant compares his situation to that of *People v. Bishop* (1997) 56 Cal.App.4th 1245 [66 Cal.Rptr.2d 347], where the trial court struck two prior felony convictions in the interest of justice and the Court of Appeal affirmed. A comparison of the cases is of little assistance to the defendant upon appeal. The *Bishop* holding does not establish that had the trial court denied Bishop's motion such a decision would have been arbitrary or irrational. (*Id.* at pp. 1249-1251.) Rather, the holding only establishes that the trial court did not abuse its discretion in striking the two prior felony convictions. (*Ibid.*)

The Court of Appeal in *Bishop* indicated that it might have denied Bishop's motion had it been the trial court. (*People v. Bishop, supra,* 56 Cal.App.4th at p. 1251.) The *Bishop* court stated, "While the People and perhaps even this court may be of the opinion that Bishop appears undeserving of leniency, the paramount consideration is not what the prosecution, defense or appellate court might conclude. Rather, what counts is what the trial court in this case concluded, as expressed by the reasons it stated . . . ." (*Ibid.*) A comparison only demonstrates that reasonable people might disagree. Defendant has failed to demonstrate that the trial court's decision was irrational or arbitrary. The trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 2, 2002. Kennard, J., was of the opinion that the petition should be granted.