Filed 2/19/14  P. v. True CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063007 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1100984) |
| TIMOTHY AARON TRUE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Mark Mandio, Judge.  Affirmed.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury found Timothy Aaron True guilty of active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a))[1] (count 2).[2] The trial court found that True had previously suffered three prior serious felony convictions (§ 667, subd. (a)) and three prior strike convictions (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)(A)). True filed a motion to dismiss two of the prior strike convictions. At sentencing, the trial court denied True's motion and sentenced True to an aggregate term of 30 years to life in prison, consisting of 25 years to life under the "Three Strikes" law (§§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii)) plus an additional consecutive term of five years for one of the prior serious felony convictions (§ 667, subd. (a)(1)).[3]

On appeal, True claims that there is insufficient evidence in the record to support the jury's verdict finding him guilty of active participation in a criminal street gang. True also contends that the trial court abused its discretion in denying his motion to dismiss two of his prior strike convictions, and that his sentence of 30 years to life in prison

---

[1] All subsequent statutory references are to the Penal Code, unless otherwise specified.

[2] The jury was unable to reach a verdict with respect to count 1, assault with force likely to produce great bodily injury (§ 245, subd (a)(1)), and the court declared a mistrial as to that count. The court subsequently dismissed count 1 in the interest of justice.

[3] The trial court explained that True could not be sentenced on the remainder of the prior serious felony findings because the convictions on which the findings were based had not been "brought and tried separately." (§ 667, subd. (a)(1).)

constitutes cruel and unusual punishment under both the state and federal Constitutions.[4] We affirm the judgment.

## II.

## FACTUAL BACKGROUND

A. *The prosecution's evidence*

On January 18, 2011, True and fellow Coors Family Skins' (CFS) gang member Justin Hayes, were incarcerated together. Shortly after 8:25 that evening, Riverside County Sheriff's Deputy Daniel Brown observed True and Hayes kicking and punching another inmate, Alan Watne. Watne fell backward from the force of the blows. True and Hayes then kicked, punched, stomped, and kneed Watne while he crouched in a fetal position.

Several deputies ordered True and Hayes to stop fighting. After True and Hayes failed to comply with these commands, the deputies fired 10 to 15 pepper ball rounds near True and Hayes.

Shortly thereafter, True and Hayes stopped fighting and lay on the ground. As deputies ordered True to leave the area, True laughed and yelled "Coors Up" three times. Hayes then jumped up and continued to attack Watne. Hayes finally stopped fighting after deputies shot additional pepper ball rounds at him.

---

[4] The Eighth Amendment of the United States Constitution prohibits imposition of "cruel *and* unusual punishment." (Italics added.) Section 17 of article I of the California Constitution prohibits imposition of "[c]ruel *or* unusual punishment." (Italics added.)

After the incident, the knuckle on True's right index finger was bleeding. Watne's chest and face were red, he had a cut under his left eye, and his face was very swollen.

City of Hemet Police Officer Takashi Nishida, who was called by the People as a gang expert, testified that, in his opinion, at the time of the attack True was an active member of, and participant in, the CFS gang. According to Nishida, the CFS gang is a White supremacist hate group whose primary activities include committing various serious crimes, including murder. Nishida also stated that it appeared that True committed the assault on Watne in association with Hayes, another CFS gang member.

B.     *The defense*

True, Hayes, and Watne each testified that they staged the fight in an attempt to get Watne transferred to another housing unit. True and Hayes both admitted that they were members of CFS, but claimed they were not "active" members.

Gregorio Estevane, another gang expert, testified that street gang members are not typically active members of their street gangs while they are incarcerated.

C.     *Rebuttal evidence*

Deputy Brown testified that he spoke with both Hayes and Watne shortly after the incident. Both said that the incident was caused by a misunderstanding that had since been resolved.

4

DISCUSSION

A.    *There is sufficient evidence in the record to support the jury's verdict finding True guilty of active participation in a criminal street gang*

True claims that there is insufficient evidence to support the jury's verdict finding him guilty of active gang participation because the record does not contain substantial evidence that he willfully promoted, furthered, or assisted the felonious conduct of a criminal street gang, which is one of the elements of the charged offense. Specifically, True contends that there is insufficient evidence that he committed an assault with force likely to produce great bodily injury or that he aided in the commission of that crime.

    1.    *Standard of review*

In determining the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 (*Jackson*).) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]'

[Citation.]"  (*People v. Clark* (2011) 52 Cal.4th 856, 943.)  "A state court conviction that is not supported by sufficient evidence violates the due process clause of the Fourteenth Amendment and is invalid for that reason."  (*People v. Rowland* (1992) 4 Cal.4th 238, 269, citing *Jackson*, *supra*, at pp. 313-324.)

2.      *Procedural background*

The trial court instructed the jury that in order to find True guilty of active participation in a criminal street gang, the jury had to find that the People had established several elements, including the following:

"The defendant willfully assisted, [or] promoted felonious criminal conduct by members of the gang either by:

"A.      Directly and actively committing a felony offense; or

"B.      Aiding and abetting a felony offense.  [¶]  . . .  [¶]

"Felonious criminal conduct means committing or attempting to commit the following crime: Assault with force likely to cause great bodily injury."

The trial court instructed the jury with respect to the elements of the underlying offense of assault with force likely to cause great bodily injury as follows:

"1.      The defendant did an act that by its nature would directly and probably result in the application of force to a person;

"2.      The force used was likely to produce great bodily injury;

"3.      The defendant did that act willfully;

"4.      When the defendant acted, he was aware of the facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and

"5.      When the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person."

6

3.      *Application*

The following evidence in the record constitutes substantial evidence that True committed an assault with force likely to produce great bodily injury, the underlying felony offense supporting his conviction for active gang participation.[5]

Deputy Brown testified that he observed True and Hayes kicking and punching Watne.  When asked to describe the incident, Deputy Brown testified:

> "Continual punching, kicking.  I saw inmate Watne fall backwards towards the corner of the top tier.  And I observed Timothy True and Justin Hayes kicking and punching and kneeing him in the face while [Watne was] crouched down kind of in a fetal position."

Deputy Brown estimated that True punched Watne 10 times and kneed him eight times.  According to Deputy Brown, True and Haynes continue to punch, kick and knee Watne even though Watne was not "fighting back" and had assumed a "fetal position." Deputy Brown also stated that True and Hayes did not stop their attack until deputies fired pepper balls at them.

In addition, True admitted at trial that he punched Watne in the face eight to 10 times, kneed him in the stomach and chest about eight times, and kicked him in the side while he was on the ground.

---

5      As noted above, True bases his sufficiency claim solely on the contention that there is insufficient evidence in the record to support a finding that he either personally committed, or aided and abetted, the underlying felony offense supporting his conviction for active gang participation, namely, an assault with force likely to produce great bodily injury.

7

There is thus overwhelming evidence that True willfully and with knowledge did an act that by its nature would directly and probably result in the application of force to Watne. The jury could have reasonably found that, while attacking Watne with his fists, knees, and feet, True had the present ability to apply force likely to produce great bodily injury and that the force that True used was likely to produce great bodily injury. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028 ["One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on . . . force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial. [Citation.] That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established"]; *People v. McDaniel* (2008) 159 Cal.App.4th 736, 748-749 ["Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied."].) The record thus contains evidence from which the jury could have reasonably found proof of each of the elements of assault with force likely to produce great bodily injury.

True does not address the evidence discussed above in his brief.[6] Instead, True makes a series of arguments premised on the contention that the trial court's reasons for

6    True notes that the jury could not reach a verdict on the charge of assault with force likely to produce great bodily injury (count 1) (§ 245, subd. (a)(1)), and yet found him guilty of count 2, which was based, in part, on the same conduct as alleged in count 1. However, True "acknowledges the general rule that inconsistent verdicts are allowed to stand . . . ." (See, e.g., *People v. Lewis* (2001) 25 Cal.4th 610, 656.) Further,

8

denying a motion for new trial[7] were "erroneous."  For example, True contends that the trial court erroneously stated that the jury could have found that he committed a felony offense "solely upon the fact that Hayes pled guilty to a felony assault."  Even assuming that True were correct that the "reasons[] cited by the trial court as the basis for denying the new trial motion [we]re erroneous," any such allegedly flawed reasoning is irrelevant to the question whether the record contains substantial evidence to support the jury's verdict.  As described in the previous paragraphs, the record contains such evidence.

Accordingly, we conclude that there is sufficient evidence in the record to support the jury's verdict finding True guilty of active gang participation premised on his commission of an assault with force likely to produce great bodily injury.

B.  *The trial court did not abuse its discretion in refusing to dismiss True's prior strike convictions*

True claims that the trial court erred in denying his motion to dismiss two of his three prior strike convictions.

1.  *Procedural background*

After the jury returned its verdict finding True guilty of active participation in a criminal street gang, the trial court found that True had suffered three prior strike

---

True does not contend that the general rule does not apply in this case.  Accordingly, we have no occasion to consider the effect of any inconsistency in the jury's verdicts on counts 1 and 2 in this appeal.

[7]    After the jury rendered its verdict, True filed a motion for new trial in which he argued that the jury's verdict was contrary to the evidence.

convictions for attempted murder (§ 664, 187), first degree burglary (§ 459), and active gang participation (§ 186.22, subd. (a)).

Prior to sentencing, True filed a motion to dismiss two of his three prior strikes in the interests of justice (§ 1385) and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. In a supporting brief, True contended that several factors supported dismissing the two prior strikes, including his age, the relative lack of seriousness of the current offense, and the fact that his prior strike convictions were "closely connected factually."

At the sentencing hearing, the court heard argument from defense counsel and the prosecutor. After hearing argument, the court denied the motion. The court indicated that True's continual use of violence was the primary factor on which the court was basing its decision. The court also commented, "This seems to be exactly the type of case that the Three Strikes law was designed for." The trial court further stated that, although it had considered the fact that True had incurred his prior strikes in connection with the same incident, this fact did not warrant striking any of True's strikes.

2.    *Governing law and standard of review*

The law governing a trial court's consideration of whether to dismiss a prior strike conviction is well established:

> "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

10

In *People v. Leavel* (2012) 203 Cal.App.4th 823, 837, this court summarized the standard of review to be applied in reviewing a trial court's ruling on a motion to dismiss a prior strike conviction:

> "The court's ruling on a motion to strike is subject to a deferential abuse of discretion standard of review. [Citation.] A 'trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not "aware of its discretion" to dismiss [citation], or where the court considered impermissible factors in declining to dismiss.' [Citation.] The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. [Citation.] Further, a sentence will not be reversed merely because reasonable people might disagree. ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.]"

3.      *Application*

True's arguments in support of his contention that the trial court abused its discretion in refusing to grant his motion to dismiss the two strike priors are not persuasive. First, True argues that the fact that his "adult criminal history is minimal" supported dismissing the strike. We are not persuaded. To begin with, True has been in custody for most of his adult life. At the time of sentencing in this case, True was 24 years old. True committed an attempted murder and two other serious offenses when he was, according to his brief, "either 19 or 20 years old."[8] True suffered three strike convictions for his commission of these offenses on the same date in 2010. While awaiting sentencing on these convictions, True committed the current offense. Thus, despite being in custody the bulk of his adult life, True has continued to commit crimes.

---

[8]     The exact date of the commission of these crimes is not clear from the record.

11

In addition, True has a lengthy juvenile record, which consists of six prior adjudications, including adjudications for aggravated assault (§ 245, subd. (a)(1)) and aggravated battery (§ 243, subd. (d)). Under these circumstances, the trial court did not abuse its discretion in declining to dismiss True's prior strike convictions in light of his criminal record.

True also contends that the circumstances of the current offense support dismissing the strike. We disagree. True actively promoted a criminal street gang (§ 186.22, subd. (a)) by participating in a group assault. The Supreme Court has noted that the activities prescribed by section 186.22, subdivision (a) present a "clear and present danger to public order and safety." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1133.) In addition, True committed this offense while in a custodial setting. In short, the trial court did not abuse its discretion in failing to dismiss the prior strikes in light of the circumstances of the current offense.

Finally, True argues that because his "three prior strikes arose from the single act of assaulting someone in a home," the trial court abused its discretion in denying his motion to dismiss two of his prior strikes, under the rationale of *People v. Burgos* (2004) 117 Cal.App.4th 1209, 1211 (*Burgos*).[9] In *Burgos*, the Court of Appeal

---

[9]     A related issue is pending in the Supreme Court. (See *People v. Vargas*, review granted Sept. 12, 2012, S203744 [argument limited to issue did "the trial court abuse its discretion under *People v. Superior Court (Romero)*[, *supra*, 13 Cal.4th 497], by failing to dismiss one of defendant's two strikes, given that they arose from the same act" on Oct. 15, 2013].)

noted that the defendant's two prior strike convictions for attempted carjacking and attempted robbery "arose from a single criminal act, where appellant and two companions approached a man at a gas station and appellant demanded the victim's car while one of the companions told the victim that he had a gun." (*Id*. at p. 1212.) The *Burgos* court held that "the trial court abused its discretion in refusing to strike one of [appellant's] two prior strike convictions, because the two prior strike convictions arose from the same act." (*Id*. at p. 1211.)

Even if we were to follow *Burgos* (but see *People v. Scott* (2009) 179 Cal.App.4th 920, 930 [disagreeing with *Burgos* to the extent it may be read to "*mandate* striking a strike" in cases in which two strike convictions are premised on the same act]), True failed to demonstrate that *his* prior strikes arose from a *single act*. (See *Scott*, *supra*, at p. 925, fn. 2 ["to the extent defendant wanted to show that his two strikes arose from the same act, he had the burden to provide *evidence* of that fact"].) In the trial court, True contended that the jury instructions from his prior convictions show the charges arose from the same act, and, on appeal, he similarly contends that all of his convictions arose from the single act of "assaulting someone in a home." We disagree.

The jury instructions from the prior case do not demonstrate that True's convictions were premised on the *same act*. On the contrary, the instructions on attempted murder (§§ 664, 187), first degree burglary (§ 459), and active gang participation (§ 186.22, subd. (a)) refer to multiple *different* acts. In order to prove True's commission of an attempted murder in the prior case, the People were required to demonstrate that True performed a "direct but ineffectual act . . . towards killing another

13

human being."  In contrast, in order to prove True's commission of a burglary, the People were required to prove that True "enter[ed] a building" with the specific intent to commit assault with a deadly weapon, assault with force likely to cause great bodily injury, and/or attempted murder.  Finally, in order to prove True's violation of section 186.22, subdivision (a), the People were required to establish various elements, including that True "actively participate[d] in a criminal street gang."  The jury instructions from True's prior case thus do not establish that True's prior convictions were premised on the single act of "assaulting someone in a home."

To the extent that True's brief may be read as arguing that the trial court abused its discretion in refusing to dismiss the strikes because True's prior strikes were "closely connected" in their commission, even if they did *not* arise from a "single act," we reject this argument, as well.  Even assuming that True's prior strikes were "closely connected" factually, the nature and circumstances of the current offense as well as those related to his prior convictions demonstrate True's willingness to engage in gang-related violence.  Further, True has pointed to nothing in the particulars of his background, character, or prospects, that demonstrates that the trial court abused its discretion in refusing to dismiss his prior strike convictions merely because the prior strikes were "closely connected" factually.

Having rejected all of True's arguments, we conclude that the trial court did not abuse its discretion in denying True's motion to dismiss two of his prior strike convictions.

14

C.    *True's sentence of 30 years to life does not constitute cruel or unusual punishment under the state or federal Constitutions*

True claims that his sentence of 30 years to life constitutes cruel and unusual punishment under the state or federal Constitutions.[10]

1.    *True's sentence does not constitute cruel and unusual punishment under the federal Constitution*

a.    *Governing law*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." It applies to the states via the Fourteenth Amendment and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " (*Ewing v. California* (2003) 538 U.S. 11, 20 (*Ewing*) (plur. opn. of O'Connor, J.), quoting *Harmelin v. Michigan* (1991) 501 U.S. 957, 996-997.)[11]

In *Ewing*, the United States Supreme Court considered whether a sentence of 25 years to life under California's Three Strikes law violated the Eighth Amendment. Ewing was convicted of grand theft for shoplifting three golf clubs valued at $1,200. He had previously been convicted of four serious felonies, including robbery and three burglaries

---

[10]    We exercise our discretion to consider True's claims on their merits, despite the possible forfeiture of such claims in light of the fact that True did not raise any claim of cruel or unusual punishment in the trial court. (See *Williams*, *supra*, 17 Cal.4th at p. 161, fn. 6 [appellate court has discretion to consider claims that are not properly preserved for review].)

[11]    Chief Justice Rehnquist and Justice Kennedy joined the plurality opinion. Justices Scalia and Thomas filed opinions concurring in the judgment, in which they concluded that the Eighth Amendment contains no proportionality principle. (*Ewing*, *supra*, 538 U.S. at pp. 31-32 (conc. opns. of Scalia, Thomas, Js.).)

stemming from a single case. (*Ewing*, *supra*, 538 U.S. at pp. 17-18, 20.) In addition to the serious felony convictions, Ewing's criminal record included numerous theft related convictions, and convictions for drug possession, battery, burglary, unlawful possession of a firearm, and trespassing. (*Id.* at p. 18.)

The United States Supreme Court concluded that Ewing's sentence did not violate the Eighth Amendment. (*Ewing*, *supra*, at pp. 30-31; *id.* at pp. 31-32 (conc. opns. of Scalia, Thomas, Js.).) The plurality reasoned:

> "Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record. [Fn. omitted.] Ewing has been convicted of numerous misdemeanor and felony offenses, served nine separate terms of incarceration, and committed most of his crimes while on probation or parole. His prior 'strikes' were serious felonies including robbery and three residential burglaries. To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated. The State of California 'was entitled to place upon [Ewing] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State.' [Citation.] Ewing's is not 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.' [Citation.]" (*Ewing*, *supra*, 538 U.S. at pp. 29-30.)

In *In re Coley* (2012) 55 Cal.4th 524 (*Coley*), the California Supreme Court concluded that a 25-year-to-life sentence imposed under the Three Strikes law on a defendant who was "convicted of failing to update his sex offender registration within five working days of his birthday" (*id.* at p. 530) did not violate the Eighth Amendment. Coley had previously suffered three prior serious and violent felony convictions for voluntary manslaughter (§ 192), robbery (§ 211), and acting in concert to aid and abet the

16

commission of rape (§ 264.1), and the trial court found that Coley "deliberately failed to register as a sex offender even though he knew he had an obligation to do so." (*Coley*, *supra*, at p. 561.) The *Coley* court applied *Ewing* and its progeny and concluded, "Taking into account both the circumstances of petitioner's triggering offense and petitioner's very serious criminal history, we conclude that the 25-year-to-life sentence imposed upon petitioner does not constitute cruel and unusual punishment in violation of the Eighth Amendment." (*Coley*, *supra*, at p. 562.)

        b.    *Application*

The circumstances of True's triggering offense, his participation in a violent gang-related group assault on another inmate, are at least as serious as the triggering offense at issue in *Coley*. Further, True's criminal history is similarly extensive, and includes a conviction for attempted murder, for which he is serving a separate life sentence. In short, in applying *Coley* and the cases cited therein, there is nothing about True's sentence that would suggest an Eighth Amendment violation.

The cases that True cites in his brief in support of his Eighth Amendment claim are clearly distinguishable. For example, in *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1078, the Court of Appeal described defendant's triggering offense, failing to adequately register as a sex offender, as "the most technical and harmless violation of the registration law we have seen." In contrast, True's current conviction for active gang participation (§ 186.22, subd. (a)) based on a gang-related assault was far from "technical" or "harmless."

In *Ramirez v. Castro* (9th Cir. 2004) 365 F.3d 755, the defendant's prior criminal record was "comprised solely of two 1991 convictions for second-degree robbery" (*id*. at p. 768), which the Ninth Circuit stated were "more accurately described as 'confrontation petty theft and not really robbery, notwithstanding the convictions.' " (*Ibid*.) In concluding that that the defendant's 25-years-to-life Three Strikes sentence violated the Eighth Amendment, the *Ramirez* court stated, "[I]t is doubtful that California's Three Strikes law . . . was ever intended to apply to a nonviolent, three-time shoplifter such as Ramirez." (*Id*. at p. 769, citation omitted.) In this case, as discussed above, True's criminal history reflects his willingness to participate in gang-related violence. As the trial court correctly noted, True is precisely the type of criminal defendant for which the Three Strikes law was intended to apply.

Taking into account both the circumstances of True's triggering offense and his serious criminal history, we conclude that True's sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment.[12]

---

[12]     For the reasons stated in the text, a comparison the severity of True's sentence with the gravity of his current and prior conduct raises no inference of gross disproportionality. (See *Coley*, *supra*, 55 Cal.4th at p. 562 ["in determining the gravity of petitioner's conduct in evaluating an Eighth Amendment challenge to a sentence imposed under a recidivist sentencing statute, we must consider not only petitioner's triggering offense but also the nature and extent of petitioner's criminal history"].) Accordingly, we need not compare True's sentence to the sentences received by other offenders in the same jurisdiction or to the sentences imposed for the same crime in other jurisdictions in order to determine that True's sentence does not violate the Eighth Amendment. (See *Coley*, *supra*, at pp. 543-544, 561-562.)

2.      *True's sentence does not constitute cruel or unusual punishment under the California Constitution*

a.      *Governing law*

The California Constitution states that "cruel or unusual punishment may not be inflicted." (Cal. Const., art. I., § 17.)

In *People v. Gonzales* (2012) 54 Cal.4th 1234, 1300, our Supreme Court summarized the manner by which a court must evaluate a claim of cruel or unusual punishment under the state Constitution:

> " 'To determine whether a sentence is cruel or unusual under the California Constitution as applied to a particular defendant, a reviewing court must examine the circumstances of the offense, including motive, the extent of the defendant's involvement in the crime, the manner in which the crime was committed, and the consequences of the defendant's acts. The court must also consider the personal characteristics of the defendant, including his or her age, prior criminality, and mental capabilities. [Citation.] If the penalty imposed is "grossly disproportionate to the defendant's individual culpability" [citation], so that the punishment " ' "shocks the conscience and offends fundamental notions of human dignity" ' " [citation], the court must invalidate the sentence as unconstitutional.' [Citation.]"

In determining proportionality, a court may also compare the challenged punishment both with the punishment prescribed for more serious crimes in the same jurisdiction and with the punishment prescribed for the same offense in other jurisdictions. (See, e.g., *In re Lynch* (1972) 8 Cal.3d 410, 423-424.)

b.      *Application*

In considering the nature of the offense, we again observe that True participated in a violent gang-related group assault on another inmate in prison. While True may be correct that the offense did not involve weapons and the victim was not severely injured,

19

his offense was nevertheless far from a minor one. Further, there is nothing in the record that would suggest that True played a minor role in the charged offense, or that True's motive for committing the crime supports the conclusion that his sentence is unconstitutional. In addition, as discussed above, True's prior criminal record is serious, and there is nothing about either his age or his mental capabilities that demonstrates that his punishment is grossly disproportionate.

We are not persuaded by True's attempt to compare his sentence under the Three Strikes law to the sentences that would be imposed under California law for serious or violent crimes in the *absence* of prior strikes. (See, e.g., *People v. Romero* (2002) 99 Cal.App.4th 1418, 1433 [" ' "Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [defendant's] punishment for his 'offense,' which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons." [Citation.]' [Citation.]"].) In addition, True's suggestion that the Three Strikes law results in a "one-size-fits-all sentence," is not factually correct. While a defendant sentenced as a third striker under the Three Strikes law will be sentenced to an indeterminate term of *at least* 25 years to life, such a defendant could receive a *longer* sentence in a case in which a tripling of the base term for the defendant's current offense would result in a sentence greater than 25 years to life. (See § 1170.12, subd. (c)(2)(A).)

Finally, with respect to True's interjurisdictional comparison, True fails to establish that California's Three Strikes law is so draconian so as to be unconstitutional. "[A] comparison of California's punishment for recidivists with punishment for

recidivists in other states shows that many of the statutory schemes provide for life imprisonment for repeat offenders, and several states provide for life imprisonment without possibility of parole. California's scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders." (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338.)[13]

In any event, the fact " '[t]hat California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual. This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code. It does not require "conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide." [Citation.] Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct.' " (*People v. Romero*, *supra*, 99 Cal.App.4th at p. 1433.)

Accordingly, we conclude that True's sentence does not constitute cruel or unusual punishment under the California Constitution.

---

[13]    True has not demonstrated that the *Cline* court's summary of recidivist laws is no longer accurate.

IV.

DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:

_____

O'ROURKE, ACTING P. J.

_____

IRION, J.