Filed 5/27/16  P. v. Honnette CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F069509 |
| Plaintiff and Respondent, | |
| v. | (Stanislaus Super. Ct. Nos. 1252635 & 1450107) |
| RYAN JOHN HONNETTE, | |
| Defendant and Appellant. | **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County. Thomas D. Zeff, Judge.

Maureen M. Bodo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Franson, J.

In case No. 1252635 appellant Ryan John Honnette pled no contest to gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) and admitted a multiple victim enhancement (Veh. Code, § 23558).[1]  In case No. 1450107 a jury convicted Honnette of driving under the influence of alcohol with a prior felony conviction for driving under the influence (§§ 23152, subd. (a) & 23550.5).  In a separate proceeding, Honnette admitted that he had a prior conviction within the meaning of the three strikes law (Pen. Code, § 667, subds. (b)-(i)).

On appeal, Honnette contends:  (1) the court abused its discretion when it denied his *Romero*[2] motion; (2) the court erred by its failure to specify the statutory basis for some fines; and (3) there are inconsistencies between the oral pronouncement of judgment, the minute order of the sentencing hearing, and Honnette's abstract of judgment.  We find merit to these last two contentions.  In all other respects, we affirm.

## FACTS

### Case No. 1252635

On the morning of October 18, 2008, Mike Gonzalves gave Honnette a ride to a Clampers Club event near Turlock, California, where Honnette drank beer.  At approximately 4:30 p.m., Honnette drove Gonzalves's car from the event back toward Turlock with Gonzalves, Matthew Miller, Wesley Romero, and Timothy Romero as passengers.  As Honnette entered a curve travelling 40 miles per hour, the tires on the right side of the car ran onto the dirt shoulder.  Honnette turned the car left toward the center of the road and then back to the right, which caused him to lose control.  The car rolled over and came to rest on the driver's side.  Honnette and three passengers were able to get out of the car.  However, Miller, who was later determined to have a blood-

---

[1]    Unless otherwise indicated, all further statutory references are to the Vehicle Code.

[2]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

alcohol content (BAC) of 0.16 percent, was partially ejected out of the left, rear passenger window and crushed by the car. Miller was transported to a hospital where he was pronounced dead. Gonzalves received a laceration on the back of his head. The other passengers were uninjured.

When the accident occurred, Honnette was not wearing corrective lenses he was required to wear while driving. He also told the responding officer he only drank four beers that day. However, a test on blood drawn from Honnette at 7:30 p.m. measured his BAC at 0.11 percent.

On June 12, 2009, the district attorney filed an information charging Honnette with gross vehicular manslaughter (count 1/Pen. Code, § 191.5, subd. (a)), driving while under the influence of alcohol causing injury (count 2/§ 23153, subd. (a)), and driving with a BAC of 0.08 or greater causing injury (count 3/§ 23153, subd. (b)). Each count also alleged a multiple victim enhancement.

On August 13, 2009, Honnette entered his plea in case No. 1252635 and the remaining counts and allegations were dismissed.

On September 21, 2009, the court suspended imposition of sentence, placed Honnette on probation for five years, and ordered him to serve 365 days in custody. From November 16, 2009, through November 12, 2010, Honnette served this sentence on the home detention program.

### Case No. 1450107

On September 28, 2012, while still on probation in case No. 1252635, Honnette was arrested during a traffic stop after he failed several field sobriety tests and his BAC was measured at 0.22 percent.

On November 19, 2013, the district attorney filed an information charging Honnette with driving under the influence of alcohol with a prior felony conviction (count 1/§§ 23152, subd. (a) & 23550.5) and driving with a BAC of 0.08 percent or greater with a prior felony conviction (count 2/§§ 23152, subd. (b) & 23550.5). Each

3.

count also alleged that Honnette had a prior conviction within the meaning of the three strikes law and that Honnette's BAC was 0.15 percent or greater.

At trial, the prosecution evidence established that on September 28, 2012, at approximately 2:00 a.m., California State University Police Officer Aimee Powers stopped a Toyota driven by Honnette after seeing the Toyota swerving in its lane. As Officer Powers approached Honnette, she smelled alcohol and cigarettes. Honnette told the officer several times that he had not had anything to drink. However, he failed three field sobriety tests and during a search of Honnette's car, Powers found an empty 375 milliliter bottle of 80-proof whiskey. A blood test performed at 2:50 a.m. measured Honnette's BAC at 0.22 percent.

Honnette testified that earlier the night he was stopped, he drank a 24-ounce can of beer while watching a football game and went to bed at 10:00 p.m. At 1:30 a.m. he got up hungry and went to a Taco Bell where he bought a drink and some food. While driving home, he was stopped by Officer Powers. After obtaining Honnette's driver's license, registration and insurance information, Officer Powers walked back to her patrol car to run Honnette's license. Initially, Honnette was not concerned because he did not have any outstanding warrants. However, after realizing he was on probation and subject to being searched, Honnette did a quick inventory of his car and found an unopened 375 milliliter bottle of whiskey. Honnette thought the officer would find the bottle and that he needed to "get rid of the evidence." He drank the whiskey in 15 to 20 seconds because he did not think possessing an empty bottle would violate his probation.

On February 24, 2014, a jury convicted Honnette of driving under the influence of alcohol but it found the allegation that his BAC was 0.15 percent or greater not true. The jury was not able to reach a verdict on count 2 and a mistrial was declared as to that count. In a separate proceeding, Honnette admitted the three strikes allegation.

***The Probation Reports***

The probation department prepared a probation violation report in case No. 1252635 and a probation report in case No. 1450107 that were both filed on April 25, 2014. The probation violation report indicated that on December 28, 2009, probation officers found several empty wine bottles in Honnette's bedroom during a search of his residence. Honnette claimed the bottles were "collectibles."

On December 11, 2010, probation officers found a bottle of whiskey in the front room of Honnette's residence and two bottles of wine on a kitchen counter during a home visit. One of Honnette's roommates told the officers that the bottles belonged to him.

On January 13, 2011, during a contact with the probation department Honnette admitted that he celebrated completing his sentence on home detention by consuming alcohol.

On July 30, 2011, the probation department conducted a home visit and tested Honnette with an intoximeter. One test measured Honnette's BAC at 0.26 percent. A second test measured his BAC at 0.25 percent. Honnette admitted drinking a beer with lunch.

On August 1, 2011, Honnette called his probation officer to complain that the test results obtained on July 30, 2011, were false because he drank only a tall beer while having lunch at a restaurant with his family. He also admitted drinking alcohol in January 2011. Honnette was admonished about the positive test results and directed to attended Alcoholics Anonymous meetings until further notice.

On August 25, 2012 during a home visit, probation officers found two whiskey bottles, one empty and one half full, located between a television set and a wall in Honnette's bedroom. The following day Honnette called a probation officer to report that he did not consume the contents of the bottles. According to Honnette, his cousin had been at his residence and probably left the whiskey there without Honnette's knowledge.

5.

The probation violation report alleged Honnette violated his probation by using and possessing alcohol and by committing a new felony offense.  The report recommended the court sentence Honnette to prison.

The probation report in case No. 1450107 indicated Honnette was almost 33 years old when he was convicted in that case.  In December 2007 Honnette graduated from a police academy in Modesto, California.  He was employed as a police officer with the Stockton Police Department when the fatal accident occurred, but was "laid off" two weeks after his arrest in this matter.

Honnette told the probation department that after the accident he suffered from post traumatic stress disorder (PTSD).  However, he refused to take prescribed anti-depression medication.

 Honnette also reported that he began drinking when he was 16 years old, but he did not start abusing alcohol until he returned home from college and began drinking six to 12 beers every other night.  He claimed that more recently, he consumed beer or one mixed drink approximately once a month during social gatherings.  In an attached statement, Honnette continued to maintain he was sober when he was pulled over by Officer Powers and that he drank the bottle of whiskey found in his car because he thought he would violate his probation if he possessed it while it was full.  The report also recommended Honnette be sentenced to prison.

### *The Romero Motion and Sentencing*

On April 28, 2014, Honnette filed a *Romero* motion asking the court to strike his prior manslaughter conviction.  In the moving papers Honnette argued that his current offense was not particularly egregious because the jury found his BAC did not equal or exceed 0.15 percent, the offense involved minimal alcohol consumption while actually driving, and he did not injure anyone or damage any property.  Honnette also argued that his prior vehicular manslaughter conviction should be stricken because it occurred almost four years prior to his new offense and it was not "particularly egregious" because it

involved a single car accident and all the parties likely understood that Honnette had been drinking. Honnette further argued that his lapses in sobriety were not uncommon for someone who suffered from alcohol addiction and that he had not been arrested or "convicted of any new law violation or probation violation" before he was convicted in case No. 1450107.

On May 5, 2014, at Honnette's sentencing hearing, the court denied the motion stating,

> "Court having considered the nature and circumstances of the present felony conviction, the defendant's background and character [and] his prospects, the Court concludes that the defendant does not fall outside the scheme spirit and denies the motion to strike the (b) prior."[3]

The court then sentenced Honnette to an aggregate prison term of eight years four months: six years on his vehicular manslaughter conviction in case No. 1252635, a one-year multiple victim enhancement in that case, and a 16-month term on his driving under the influence with a prior felony conviction in case No. 1450107, one-third the middle term of two years, doubled to 16 months because of Honnette's strike conviction.[4]

## DISCUSSION

### *The Romero Motion*

In *Romero*, *supra*, 13 Cal.4th 497, the Supreme Court explained that under Penal Code section 1385, subdivision (a), a trial court may, in the furtherance of justice, strike or vacate an allegation or finding under the three strikes law that a defendant has previously been convicted of a serious and/or violent felony. (*Romero*, *supra*, at p. 504.)

In *People v. Williams* (1998) 17 Cal.4th 148, 161 the Supreme Court articulated the standard for striking prior convictions under the three strikes law, as follows:

---

[3]     Honnette did not raise any objection to the court's ruling.

[4]     During the hearing the court acknowledged on the record that it had read the probation violation report, the probation report, and the parties' sentencing briefs.

"We therefore believe that, in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

A trial court's decision whether or not to strike a prior conviction for purposes of the three strikes law is subject to review under the deferential abuse of discretion standard. (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1433-1434.) As explained in *People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*):

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."

The court's decision to deny Honnette's *Romero* motion was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Honnette's strike conviction was based on his 2009 conviction for gross vehicular manslaughter in case No. 1252635. The seriousness of that offense was underscored by the death of one of Honnette's passengers, an injury to a second one, and the presence of two other passengers in the car who miraculously escaped injury. Further, Honnette had a BAC of 0.11 percent two hours after the accident and he was not wearing the corrective lenses he was required to wear while driving. Additionally, as a

police officer, Honnette should have been well aware of the dangers of drinking and driving.

Moreover, it is clear from the numerous times alcohol was found at Honnette's house and his admissions to probation officers, that he continued drinking alcoholic beverages through the date he was arrested in case No. 1450107. Further, when he committed the current offense he had a BAC of 0.22 percent, he was still on probation for his manslaughter offense, and he showed no remorse and failed to take responsibility for his conduct by continuing to insist that his high BAC was the result of drinking a 375 milliliter bottle of whiskey while Officer Powers checked his license. Additionally, Honnette's strike added only eight months to his sentence. These circumstances amply support the court's finding that Honnette did not fall outside the spirit of the three strikes law.

Honnette contends the court abused its discretion when it denied his *Romero* motion because it failed to give adequate consideration to several circumstances of his manslaughter offense including the following: (1) Honnette was employed as a police officer when the accident occurred; (2) he was not speeding at that time; (3) the victim also consumed alcohol and had a BAC of 0.16 percent; and (4) at his original sentencing hearing for his gross vehicular manslaughter conviction, Gonzalves and the mother of the deceased victim requested leniency on Honnette's behalf. Honnette further contends the court failed to consider his alcoholism, PTSD, depression, "history of denial or noncompliance with what little medical or therapeutic help was offered to him[,]" and his abilities and prospects if he received appropriate treatment for his medical conditions. According to Honnette, his case is not as serious as that of the defendant in *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), which the Supreme Court described as "one of the extraordinary cases … in which the nature and circumstances of defendant's prior strike convictions demonstrate the trial court was required to dismiss one of them because

9.

failure to do so would be inconsistent with the spirit of the Three Strikes law." (*Id*. at p. 649.) Honnette is wrong.

In *People v. Scott* (1994) 9 Cal.4th 331, the Supreme Court held that "the [forfeiture] doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, *misweighed the various factors*, or failed to state any reasons or give a sufficient number of valid reasons." (*Id*. at p. 353, italics added.)

Honnette did not raise any objection to the trial court's ruling denying his *Romero* motion. Thus, he forfeited his contention that the court did not consider certain circumstances and misweighed others. However, even if this contention were properly before us, we would reject it. The court considered most of the circumstances cited by Honnette because this information was included in the two probation reports that were prepared for Honnette's May 5, 2014, sentencing which the court acknowledged reading.

Further, during the hearing on the *Romero* motion, the defense did not present any evidence that Honnette was ever diagnosed with alcoholism, PTSD, or depression or of his prognosis for any of these conditions if he received treatment. Additionally, it appears the court was unaware that victim Gonzalves and the parents of victim Miller expressed empathy for Honnette at his original sentencing hearing because a different judge presided over that hearing and defense counsel did not bring this circumstance to the court's attention.

"In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling." (*People v. Mendoza* (2000) 24 Cal.4th 130, 161.) Thus, in reviewing the court's denial of Honnette's *Romero* motion we do not consider the circumstances noted in the preceding paragraph because they were not established in the record when the court considered the motion.

Moreover, *Vargas* is inapposite. The defendant in *Vargas* had two prior strike convictions for robbery and carjacking, which "were based on *the same act* of taking the victim's car by force[.]" (*Vargas, supra,* 59 Cal.4th at pp. 640, 645, italics added.) *Vargas* held that "two prior convictions arising out of a single act against a single victim" cannot constitute two separate strikes, and that the sentencing court should have dismissed one conviction. (*Id*. at p. 637.) *Vargas* explained that treating such a defendant as a third strike offender was inconsistent with the intent underlying the three strikes law because the defendant's prior strikes "were not only tried in the same proceeding and committed during the same course of criminal conduct, they were based on the same act, committed at the same time, against the same victim ...." (*Id*. at pp. 638, 645.)

*Vargas* is easily distinguishable because Honnette's case does not involve two prior convictions that are based on the same act perpetrated against a single victim. Thus, we conclude that the court did not abuse its discretion when it denied Honnette's *Romero* motion.

### The Other Issues

Honnette contends the court erred because it imposed a $1,600 fine without stating the statutory basis for the fine. He also contends the court's order that he pay a probation revocation fine of $300 is inconsistent with the court's oral pronouncement of judgment on September 21, 2009, in case No. 1252635 because in that proceeding it imposed only a $200 probation revocation fine. Additionally, he contends his abstract of judgment erroneously fails to state the statutory basis for the $3,371 in Vehicle Code fines the court imposed, the $110 court operations assessment included in the abstract is incorrect, and the operations assessment included in his abstract is incorrect. Honnette also contends there are inconsistencies between the court's oral pronouncement of judgment, one of the minute orders of the May 5, 2014 sentencing hearing, and his abstract of judgment. Therefore, according to Honnette, remand is required to allow the court to clarify or

11.

correct these errors. We agree the matter must be remanded to allow the court to correct several errors of which Honnette complains.

All fines and fees and their statutory basis must be set forth in the abstract of judgment. (*People v. Hamed* (2013) 221 Cal.App.4th 928, 940; *People v. High* (2004) 119 Cal.App.4th 1192, 1200.) Thus, the court erred by its failure to specify the statutory basis for the $1,600 fine it orally imposed at the May 5, 2014, sentencing hearing and by failing to specify the statutory basis for the $3,371 in Vehicle Code fines that are memorialized in Honnette's abstract of judgment.

Further, a restitution fine survives the revocation of probation. (*People v. Chambers* (1998) 65 Cal.App.4th 819, 822.) Since the court originally imposed a $200 restitution fine in case No. 1252635, and the probation revocation fine must be assessed in the same amount (Pen. Code, § 1202.44), the court erred when it increased Honnette's probation revocation fine to $300.

Moreover, the court imposed a $30 court operation fee in case No. 1256235 when it originally sentenced Honnette and a $40 court operation fee in case No. 1450107 when it sentenced him on May 5, 2014. However, Honnette's abstract of judgment erroneously indicates in section 9 (d) that the court imposed $110 in court operations fees.

The abstract also fails to separately memorialize the $4 emergency air medical penalty fee imposed by the court or the statutory basis for this fee. Further, the minute order for the May 2014 sentencing hearing that was prepared in case No. 1450107 omits this fee. It also erroneously indicates that the court imposed an $80 court operations assessment in that case and a $60 assessment pursuant to Government Code section 70373. In view of the foregoing, we will remand this matter to the trial court so that it may correct the errors noted above and issue a corrected abstract of judgment.

## DISPOSITION

The matter is remanded to the trial court for it to issue an amended minute order and an amended abstract of judgment that correct the errors noted above and that identify

12.

the statutory basis for the fees and fines imposed in each case. The trial court is also directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.