Filed 8/28/20  P. v. Perez CA4/2
See Concurring and Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071544 |
| v. | (Super.Ct.No. INF1700473) |
| ARTHUR PEREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Alfonso Fernandez, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Arthur Perez was sentenced to 40 years to life after being convicted of carjacking (Pen. Code,[1] § 215, subd. (a), count 1), assault with a deadly weapon (§ 245, subd. (a)(1), count 2), and criminal threats (§ 422, count 3), as well as firearms and recidivism based enhancements. In this appeal, Perez argues (1) his waiver of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) was not knowing and intelligent; (2) the trial testimony of the victim was involuntary and coerced; (3) remand is required so that the court can exercise its new discretion under Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Sen. Bill 1393); (4) the trial court abused its discretion by denying his motion to dismiss at least one of his strike enhancements pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*); (5) an enhancement under section 667.5, subdivision (b) should have been stricken instead of stayed; (6) the trial court erred under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) by imposing various fines and fees without determining if he had the ability to pay them; and (7) the sentencing minute order and abstract of judgment require correction because they do not accurately reflect the oral pronouncement of judgment.

We find that Perez's waiver of his *Miranda* rights was knowing and intelligent, that the victim's trial testimony was not coerced, and that the trial court did not abuse its discretion in denying Perez's *Romero* motion. We agree with Perez, however, that his sentence should be vacated and the matter remanded for the trial court (1) to exercise its new discretion under Sen. Bill 1393; (2) to strike the section 667.5, subd. (b)

---

[1] Further undesignated statutory references are to the Penal Code.

enhancement; (3) to consider the parties' arguments and evidence regarding Perez's ability to pay any imposed fines and fees; and (4) to resentence Perez, ensuring that the new sentencing minute order and abstract of judgment accurately reflect the oral pronouncement of judgment.

## I.  BACKGROUND

The victim testified that in March 2017, he was homeless and living in his car. One morning, he was resting in his vehicle at a carwash in Indio when Perez, someone whom he had known for years, approached him.  Perez asked for a ride to a nearby casino.  The victim said that he had no gas in the car, but if Perez would give him three dollars, he would give him a ride.  Perez refused, pulled out a knife, held it to the victim's throat through the car window, and demanded that the victim either "get out or bleed out."  The victim exited the car.  Perez got in the car and drove off.  The victim called police, providing a detailed description of both Perez and the car, and later picked Perez out of a photographic lineup.

Perez was taken into custody about five hours after the carjacking, when a police officer spotted him walking down a street.  Perez told the officer he had just come from a particular casino.  The victim's car was found shortly thereafter, parked at the casino. Surveillance footage showed Perez exiting the victim's car, along with a female companion, and Perez's fingerprints were found on the car door.

Perez waived his *Miranda* rights and admitted to stealing the car and driving to the casino. He admitted using a knife during the carjacking, and he admitted to telling the victim "you gonna bleed out and you need to get out."

A jury found Perez guilty on all three counts. As to count 1, the jury found true an allegation, pursuant to section 12022, subdivision (b)(2), that Perez had personally used a deadly or dangerous weapon. The trial court found true allegations that Perez had two strike priors (§§ 667, subds. (b)-(i), 1170.12), two serious felony priors (§ 667, subd. (a)), and that he had been convicted of a felony, but failed to remain free from prison for five years (§ 667.5, subd. (b)). The trial court imposed a sentence of 40 years to life, consisting of 27 years to life on count 1—triple the upper term, pursuant to section 667, subdivision (e)(2)(A)(i)—plus three years for the section 122022, subdivision (b)(2) enhancement of count 1 and 10 years for the two section 667, subdivision (a)(1) enhancements. The court imposed stayed sentences for the remaining counts and enhancements. The trial court also imposed various fines and fees, including a restitution fine of $5000 (§ 1202.4, subd. (b)), a suspended parole revocation fine of $5000 (§ 1202.45), a court operations assessment fee of $120 (§ 1465.8, subd. (a)(1)), a conviction assessment fee of $90 (Gov. Code, § 70373), a booking fee of $514.58 (Gov. Code, §§ 29550, 29550.1), and a probation report fee in an amount not to exceed $1091 (§ 1203.1b).

## II. DISCUSSION

### A. Miranda *Waiver*

Perez argues that his waiver of his *Miranda* rights was not knowing and intelligent, asserting that he "was not coherent enough to understand the consequences of waiving vital constitutional rights or to understand that he was waiving constitutional rights." We are not persuaded.

"In reviewing a trial court's *Miranda* ruling, we accept the court's resolution of disputed facts and inferences and its evaluations of credibility, if supported by substantial evidence, and we independently determine, from the undisputed facts and facts properly found by the trial court, whether the challenged statement was illegally obtained." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1105.) "Ultimately, the question becomes whether the *Miranda* waiver is shown by a preponderance of the evidence to be voluntary, knowing and intelligent under the totality of the circumstances surrounding the interrogation." (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 219 (*Sauceda*).) "The waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception' [citation], and knowing in the sense that it was 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" (*Ibid.*)

"Intoxication alone does not render a confession involuntary." (*People v. Debouver* (2016) 1 Cal.App.5th 972, 978.) "Our Supreme Court 'has repeatedly rejected claims of incapacity or incompetence to waive *Miranda* rights premised upon voluntary

5

intoxication or ingestion of drugs, where . . . there is nothing in the record to indicate that the defendant did not understand his rights and the questions posed to him.'" (*Ibid.*)

The People argue that Perez forfeited any claim that his *Miranda* waiver was not knowing and intelligent. This argument is without merit. In its motions in limine, the prosecution sought permission to introduce Perez's statement to police. In Perez's motions in limine, he sought to exclude the same statement, including on the basis that "there was no indication that Defendant's statement was knowing and voluntary and that there may be reason to believe that Defendant was either high on drugs or intoxicated thus vitiating the element of consent." The trial court, presented with these competing motions in limine, ruled in favor of the prosecution. Perez adequately preserved the issue for our review.

On the merits, however, Perez's claim fails. Before asking Perez any substantive questions, the detective who interviewed him read him his *Miranda* rights, and Perez acknowledged those rights with simple, affirmative verbal responses. Perez's lengthy criminal history also suggests that he was well familiar with law enforcement and his *Miranda* rights. (See *People v. Debouver*, *supra*, 1 Cal.App.5th, at p. 978.) As well, the detective who interviewed Perez was the law enforcement officer who first made contact with Perez as he was walking down the street, away from the casino, immediately prior to his arrest. The detective observed that Perez had shown no "obvious symptoms of being under the influence" of drugs or alcohol. The detective rejected defense counsel's

suggestion during cross-examination that Perez seemed "kind of out of it" during the interview.

Many of Perez's responses to questions regarding the events in question were straightforward, demonstrating no difficulty in understanding the questions, and no lack of ability to respond coherently. For example, Perez initially denied knowing anyone with the victim's name, but when reminded that the victim drove a black Honda, Perez said: "Oh him. I—I took it . . . ." When the detective asked "Did you take it this morning," Perez responded: "Yeah I think I took it last night." The detective asked where Perez took the car; he stated "At the car wash." Perez acknowledged that he had used a knife when taking the car with a one word answer: "Yeah." Consistent with the victim's report to police, Perez denied having a gun, explaining: "No gun . . . I don't like guns."

Perez points to some aspects of the record that might support the conclusion that he was impaired during the interview with the detective. He mumbled and slouched at times, and he gave some answers that the detective aptly described as "kind of off the wall." For example, Perez seemed to express surprise or confusion that the person who accompanied him to the casino was female, in the absence of any apparent ambiguity about her gender. Some of Perez's other answers to the detective's questions were

simply bizarre.[2]  Although the detective did not believe Perez was under the influence during the interview, he also did not perform any tests to confirm that belief.

Nevertheless, at most, Perez has demonstrated that there was some evidence of intoxication or other impairment.  He has not demonstrated that the record compelled the trial court to conclude that he was so impaired that the waiver of his rights was ineffective.  We therefore find no error in the trial court's ruling that Perez's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.

---

[2]  For example, the interview included the following exchange, after the detective asked why Perez would carjack someone he had known since high school:

"PEREZ:  Because he's lying to me.  And if he's like true friend he shouldn't say something like 'Hey dude, like, you're a guinea pig 'cause they think you're Hitler,' or something, you know what I'm sayin'?

"[Detective]:  Yeah

"PEREZ:  But come on.  Is this okay to go all, I'll go along with you guys and – and I'll probably dominate the whole world and be president or be God, or something but . . .

"[Detective]:  Mm-hm

"PEREZ:  . . . no don't be fuckin' with me though because every fuckin' – it's, like, messin' with me too much that I start to feel too way deep in there I wasn't happy.

"[Detective]:  Yes.

"PEREZ:  And I don't wanna see him no more."

B.  *Victim's Testimony*

Perez claims that his trial was fundamentally unfair because the prosecution's main witness, the victim, was coerced into testifying.  This claim fails because there is no evidence that the witness's testimony was coerced.

"A defendant may assert a violation of his or her own right to due process of the law and a fair trial based upon third party witness coercion . . . if the defendant can establish that *trial* evidence was coerced or rendered unreliable by prior coercion and that the admission of this evidence would deprive the defendant of a fair trial."  (*People v. Williams* (2010) 49 Cal.4th 405, 452-453.)  "The burden rests upon the defendant to demonstrate how the earlier coercion 'directly impaired the free and voluntary nature of the anticipated testimony in the trial itself.'"  (*Id*. at p. 453)  Trial testimony can be excluded only if the defendant establishes the unreliability of that testimony.  (*Ibid*.)

Here, Perez fails to carry his burden of demonstrating that the victim's testimony was coerced.  In response to a series of leading questions posed by defense counsel, the victim seemed for a moment to testify that he had been threatened with three years in jail if he failed to testify against Perez.[3]  After further questioning, however, it was

---

[3]  The passage in question is the following:

"[Defense counsel]:  Sir, at any point during your conversations with either the district attorney, cops, jail staff, whatever else, isn't it true that you were threatened that if you failed to testify you'd be looking at three more years of potential time in prison?  Isn't that true?

"[Victim]:  If I failed? When did they tell me that?

9

determined that the purported threat was not a threat at all, but rather advice by the victim's own appointed counsel that *if* he lied during his trial testimony, he could be "looking at three more years." The victim clarified that in fact no one from the district attorney's office or the police had ever threatened him that he could be punished if he did not testify.

We conclude that the record does not support Perez's claim that the victim's trial testimony was coerced.

C. *Sen. Bill 1393*

Perez contends that the matter should be remanded for the trial court to exercise its new discretion to strike one or more of the two section 667, subdivision (a) enhancements imposed as part of his sentence. The People argue that the trial court clearly indicated its intention to impose the maximum possible sentence, so remand is unnecessary. We conclude that remand is the better approach here.

Effective January 1, 2019, Sen. Bill 1393 amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a court, in its discretion, to strike or dismiss a prior serious felony conviction for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1-2.) Under the versions of these statutes in effect when the trial court sentenced Perez, the court was required to impose a five-year consecutive term for "any person convicted of a serious felony" (former § 667, subd. (a)), and the court had no discretion "to strike any prior

---

"[Defense counsel]: I'm wondering sir, isn't it true that you were threatened with three more potential years in custody if you failed to testify?

"[Victim]: I'm not sure. I think so."

10

conviction of a serious felony for purposes of enhancement of a sentence under Section 667" (former § 1385, subd. (b)).

The People concede, and we agree, that the changes to the law enacted by Sen. Bill 1393 apply to judgments, like the one in this case, which were not final on January 1, 2019, when Sen. Bill 1393 went into effect. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 973.) Nevertheless, "[w]e are not required to remand to allow the court to exercise its discretion if 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] enhancement' even if it had the discretion." (*People v. Jones* (2019) 32 Cal.App.5th 267, 272-273.) "The trial court need not have specifically stated at sentencing it would not strike the enhancement if it had the discretion to do so. Rather, we review the trial court's statements and sentencing decisions to infer what its intent would have been." (*Id*. at p. 273)

Here, the trial court imposed the maximum sentence available given Perez's conviction offenses and their enhancements, reciting numerous factors it found in aggravation, and finding none in mitigation. As discussed below, the court's comments on its denial of Perez's *Romero* motion also give no indication that it would have been inclined to give Perez anything less than the maximum sentence available. Further, in denying Perez's request that the fines and fees imposed be stricken or stayed, the court commented "I'm not inclined to give him any benefits of the system at this time . . . ."

11

Nevertheless, as discussed below, the matter must in any case be remanded for another reason. There is therefore no substantial waste of judicial resources in allowing the trial court to consider the matter in the first instance, and it is appropriate for us to refrain from even informed speculation about what the trial court might have done, had Sen. Bill 1393 been in effect at the time of sentencing. We express no opinion regarding how the trial court should exercise its new discretion.

D. Romero *Motion*

Perez contends that the trial court abused its discretion by denying his *Romero* motion. We find no abuse of discretion.

A trial court may dismiss a prior strike conviction under section 1385 "in furtherance of justice." (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 529-530.) In considering whether to do so, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) There is a "'strong presumption that any sentence that conforms to [the sentencing norms established by the three strikes law] is both rational and proper.'" (*In re Large* (2007) 41 Cal.4th 538, 550.)

We review the denial of a *Romero* motion for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "'Under that standard an appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of [the] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1434.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

No such extraordinary circumstances exist here. The trial court noted for the record that it had considered the arguments of both Perez and the prosecution, and explained its reasoning for denying the *Romero* motion at some length. Although the victim here was not injured, Perez's current convictions are for crimes of violence. His criminal history, dating back more than two decades, includes multiple previous crimes of violence. When released from incarceration, Perez has generally failed to remain law abiding for any extended period of time, violating his parole, probation, or drug diversion

program on many occasions.  The trial court's evaluation of Perez's character ("[I]t looks like . . . he really doesn't have any respect for other people") and prospects ("His prospects, based on his history of committing crime, violating probation and parole, and continuing substance abuse, [do] not look good") was reasonable.  Even if, as Perez argues, the record could have supported a different conclusion, the trial court's decision to deny Perez's *Romero* motion was neither irrational or arbitrary, and therefore was not an abuse of discretion.

E.  *Section 667.5, Subdivision (b) Enhancement*

Perez's sentence includes a stayed one-year enhancement pursuant to section 667.5, subdivision (b).  The same conviction that serves as the basis for this enhancement, however, also is the basis for a section 667, subdivision (a)(1) enhancement that was imposed, and not stayed.  Although the information originally showed the two alleged enhancements to be based on offenses with different conviction dates (but the same case number), that typographical error was corrected on the prosecution's motion.  The parties agree that the section 667.5, subdivision (b) enhancement should have been stricken on that basis, rather than stayed.  The parties are correct.  (See *People v. Perez* (2011) 195 Cal.App.4th 801, 805)

In addition, in supplemental briefing, the parties have agreed that the same enhancement also must be stricken on a different basis.  The recently passed Senate Bill No. 136 (2019-2020 Reg. Sess.) amended section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for certain sexually violent offenses,

14

rendering it inapplicable to Perez. (§ 667.5, subd. (b).) Again, the parties are correct. (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682.)

We therefore order the section 667.5, subdivision (b) enhancement stricken.

F. Dueñas *Error*

Perez argues that the trial court erred under *Dueñas*, *supra*, 30 Cal.App.5th at p. 1157 by imposing various fines and fees without determining if he had the ability to pay them. We agree.

In *Dueñas*, *supra*, 30 Cal.App.5th at p. 1157, decided while this appeal was pending, the Court of Appeal held that it violates due process under the federal and state Constitutions to impose the court operations and facilities fees without first determining the convicted defendant's ability to pay them. (*Id.* at pp. 1168-1169.) In addition, "to avoid serious constitutional questions" raised by the statutory restitution scheme, the *Dueñas* court decided execution of the mandatory restitution fine must be stayed unless the trial court determines that the defendant has the ability to pay it. (*Id.* at p. 1172.) Later cases have held that, at the ability to pay hearing, the defendant bears the burden of showing his or her inability to pay, and the court "must consider all relevant factors," including "potential prison pay during the period of incarceration to be served by the defendant." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490 [remanding for an ability to pay hearing]; accord *People v. Santos* (2019) 38 Cal.App.5th 923, 934 [on remand, defendant must show inability to pay, and court may consider potential prison

15

pay]; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96 (*Kopp*), review granted Nov. 13, 2019, S257844 [same].)

Since *Dueñas*, some courts have criticized its conclusions or its reasoning. (E.g. *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, 327-329, review granted Nov. 26, 2019, S258946 [holding that *Dueñas* was wrongly decided]; *People v. Cowan* (2020) 47 Cal.App.5th 32, (*Cowan*) [disagreeing in part with *Dueñas*'s reasoning, holding proper framework for analyzing ability to pay is Eighth Amendment's prohibition against excessive fines]; *Kopp*, *supra*, 38 Cal.App.5th at pp. 96-97 [applying *Dueñas*'s due process analysis to fees, but holding Eighth Amendment analysis should apply to restitution fine].) The California Supreme Court will likely resolve this split in authority, having granted review in *Kopp* to decide whether courts must "consider a defendant's ability to pay before imposing or executing fines, fees, and assessments" and if so, "which party bears the burden of proof regarding defendant's inability to pay." (*Kopp*, review granted Nov. 13, 2019, S257844.)

The People argue, and the concurring and dissenting opinion agrees, that Perez forfeited the issue. Not so. During sentencing, defense counsel expressly objected to the imposition of fines and fees in spite of Perez's inability to pay, stating: "Relative to the restitution fine, the [parole revocation fine], any other fines—oh, the booking fee, obviously, Your Honor, my client has no ability to pay. I'd ask the Court to consider

16

striking those or suspending those."[4]  The trial court rejected the request, explaining: "I'm not inclined to give him any benefits of the system at this time, although we both know that if he has no ability to pay and he's going to be gone for a substantial period of time, they may try to collect it, but I'm not sure how effective that will be."  We understand that trial court's comments to mean that it declined Perez's request to consider his ability to pay, and that it was not ruling one way or the other as to whether he lacked the ability to pay.

Neither the People, nor the concurring or dissenting opinion, have offered any authority or reasoned argument as to why Perez should have been required to specify whether his objection to the fines and fees was grounded in due process, the Eighth Amendment, or some other basis to preserve the issue for our review.  Particularly given that Perez did not have the benefit of *Dueñas* and its progeny at the time of sentencing, we find his more general objection to be adequate.

The People also argue that any *Dueñas* error should be considered harmless beyond a reasonable doubt.  We disagree.  Often, courts have held such errors to be harmless with respect to fines in the hundreds of dollars, particularly when the defendant is facing a lengthy term of imprisonment, during which prison work and other sources of funds may be available.  (E.g., *People v. Jones* (2019) 36 Cal.App.5th 1028, 1034-1035.) Here, however, the total fines and fees imposed amount to thousands of dollars.

---

**4**  Even before *Dueñas*, ability to pay could be considered as a factor in determining a restitution fine and parole revocation fine where, as here, the amount imposed was above the minimum.  (§ 1202.4, subd. (c).)

Moreover, the trial court expressed skepticism that it would be possible to collect the amounts imposed on Perez, despite the length of his imprisonment, if he did not already have the ability to pay them. On these facts, we do not find the *Dueñas* error harmless.

The matter must be remanded for the trial court to consider the parties' evidence and argument regarding Perez's ability to pay the fines and fees imposed as part of his sentence.

G. *Probation Report Fee*

The trial court ordered that Perez pay for the cost of preparing the "presentence probation report" in an amount up to $1091. Such a fee is authorized under section 1203.1b. The minute order of the sentencing hearing and the abstract of judgment incorrectly list this fee, in an amount not to exceed $1091, as being pursuant to section 1203.1c. Section 1203.1c deals with fees to cover the costs of incarceration ordered "as a term of probation or a conditional sentence," and does not apply to Perez. As Perez correctly notes, the trial court's oral pronouncement of judgment is controlling. (See, e.g., *People v. Harrison* (2005) 35 Cal.4th 208, 226.) On remand, a new minute order and abstract of judgment will be generated when Perez is resentenced. We trust that the trial court will ensure these documents accurately reflect any fines and fees that are imposed over Perez's objections regarding ability to pay.

### III. DISPOSITION

Perez's convictions are affirmed. His sentence is vacated. The matter is remanded to the trial court to resentence Perez. In doing so, the trial court is directed to

18

(1) exercise its discretion under sections 667, subdivision (a)(1) and 1385, as amended by Sen. Bill 1393; (2) strike the enhancement previously imposed and stayed under former section 667.5, subdivision (b); and (3) consider the parties' arguments and evidence regarding Perez's inability to pay any imposed fines and fees.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL                          
                                    J.

I concur:

FIELDS                    
                    J.

19

[*People v. Perez*, E071544]

RAMIREZ, P.J., Concurring and Dissenting

 I concur with the majority in all respects save one:  As to the issue relating to the challenge to the imposition of the $5000 restitution fine, I would find the issue forfeited due to the defendant's failure to object in the trial court.

 The majority remands the imposition of the restitution fine for an ability-to-pay hearing because the court's failure to conduct such a hearing violates due process, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), over the People's argument that the issue was forfeited.  I respectfully disagree because *Dueñas* addressed the mandatory minimum restitution fine and did not change the law respecting imposition of restitution fines in excess of the statutory minimum.

 It is true that since 1992 an ability-to-pay hearing is required where the court imposes a restitution fine exceeding the statutory minimum and the defendant objects.  (§ 1202.4, subd. (c)[5]; *In re Enrique Z.* (1994) 30 Cal.App.4th 464, 468-469.)  For this reason, "even before *Dueñas* a defendant had every incentive to object to imposition of a maximum restitution fine based on inability to pay because governing law as reflected in the statute (§ 1202.4, subd[s]. (c) [& (d)]) expressly permitted such a challenge."  (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033, citing *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 [holding it is defendant's obligation to object]; see also, *People v. Miracle* (2018) 6 Cal.5th 318, 356; *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40.)

---

[5]  All further statutory references are to the Penal Code unless otherwise indicated.

1

As a consequence, it has long been held that if a defendant fails to object to the restitution fine in the trial court, the issue is forfeited.  (*People v. Miracle, supra,* 6 Cal.5th at p. 356; *People v. Jenkins, supra,* 40 Cal.App.5th at p. 40; *People v. Frandsen, supra,* 33 Cal.App.5th at p. 1153.)  This is not new.  (See *People v. Avila* (2009) 46 Cal.4th 680, 729 [discussing the legislative history of section 1202.4].)

And the forfeiture rule extends to due process claims.  "[A] right may be lost not only by waiver but also by forfeiture, that is, the failure to assert the right in timely fashion."  (*People v. Barnum* (2003) 29 Cal.4th 1210, 1224, citing *Yakus v. United States* (1944) 321 U.S. 414, 444 [88 L. Ed. 834, 64 S. Ct. 660] [stating that "[n]o procedural principle is more familiar . . . than that a . . . right," even a "constitutional right," "may be forfeited"]; accord, *United States v. Olano* (1993) 507 U.S. 725, 731 [123 L. Ed. 2d 508, 113 S. Ct. 1770]; *People v. Collins* (2001) 26 Cal.4th 297, 305, fn. 2; *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9.)[6]

In my opinion, defendant has forfeited any objection to the imposition of the restitution fine and the parole revocation restitution fine by failing to object at the sentencing hearing.  (*People v. Gamache* (2010) 48 Cal.4th 347, 409; *People v. Jenkins, supra,* 40 Cal.App.5th at p. 40; *People v. Forshay* (1995) 39 Cal.App.4th 686, 689; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469.)

---

[6]  Relief from forfeiture is permitted where certain fundamental constitutional rights have been violated (*People v. Vera* (1997) 15 Cal.4th 269, 276, 278.), or where the issue involves a pure question of law.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 884-885.)  A defendant's inability to pay necessarily involves a question of fact.

I would affirm the imposition of the restitution fine.

RAMIREZ            

P. J.