Filed 11/5/21  P. v. Gant CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073642 |
| v. | (Super.Ct.No. INF1700605) |
| AVANTE JOHN GANT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge. Affirmed as modified with directions.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Avante John Gant on charges related to two armed robberies.  The trial court sentenced him to a total of 81 years to life.  In this

1

appeal, Gant argues: (1) he received ineffective assistance of counsel because his trial counsel did not request mental health diversion pursuant to Penal Code[1] section 1001.36; (2) Section 3051, subdivision (h), violates equal protection by excluding otherwise eligible offenders—such as Gant—from receiving a youth offender parole hearing if they were sentenced under the Three Strikes Law (§§ 667, subds. (b)-(j), 1170.12); (3) a one-year prison prior enhancement should be stricken pursuant to the recently enacted Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136); and (4) the trial court abused its discretion by denying his motion filed pursuant to *People v. Romero* (1996) 13 Cal.4th 497 (*Romero*).

The People concede, and we agree, that Gant's prison prior enhancement should be stricken pursuant to Senate Bill 136. In all other respects, we affirm the judgment because (1) we decline to reach the merits of Gant's ineffective assistance of counsel claim related to mental health diversion, which is more appropriately considered on a record developed in a habeas corpus proceeding; (2) we find no merit in his contention that section 3051, subdivision (h) violates constitutional equal protection principles with respect to young adult offenders sentenced under the Three Strikes Law; and (3) we find no abuse of discretion in the trial court's denial of his *Romero* motion.

## I. FACTS

Gant's charges arise from two alleged armed robberies that occurred a week apart in March 2017, at locations within a block of each other. In both cases, the victim was

---

[1] Undesignated statutory references are to the Penal Code.

accosted by a man with a handgun after using an automated teller machine outside a bank. When police apprehended Gant shortly after the second robbery, he had a loaded magazine of ammunition for a handgun in his pocket, and a matching handgun was located nearby. The parties stipulated at trial that Gant had previously been convicted of a felony.

A jury found Gant guilty of two counts of first degree robbery (§§ 211, 212.5, subd. (b), counts 1 and 4), unlawful possession of a firearm (§ 29800, subd. (a)(1), counts 2 and 5), and unlawful possession of ammunition (§ 30305, subd. (a), count 3), and found true allegations that Gant had personally used a firearm in committing the robberies (§§ 12022.53, subd. (b) & 1192.7, subd. (c)(8)). The trial court found true recidivism-based enhancements for three prior strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(a)), two serious felony priors (§ 667, subd. (a)(1)), and one prison prior (§ 667.5, subd. (b)).

The trial court denied Gant's *Romero* motion and request to strike the other sentence enhancements. It imposed a sentence totaling 81 years to life, consisting of two consecutive terms of 25 years to life for counts 1 and 4, plus 10 consecutive years for each of the firearm enhancements of those counts, 5 consecutive years for each of Gant's two serious felony priors, and one consecutive year for the prison prior.

## II. DISCUSSION

A. *Mental Health Diversion*

Gant argues that his trial counsel provided ineffective assistance of counsel by failing to request mental health diversion pursuant to section 1001.36 even though there was evidence that Gant had been diagnosed with a qualifying mental disorder.[2] We decline to reach the merits of this argument, which is more appropriately considered on an evidentiary record developed in a habeas corpus proceeding.

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) On direct appeal, a conviction will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

---

[2] This evidence includes a court ordered competency report, which discussed Gant's mental health history, but ultimately concluded he was competent to stand trial.

Here, the record does not establish why Gant's trial counsel did not request a hearing on mental health diversion. It is possible that the failure was for some unsatisfactory reason, for example, if counsel failed to consider the possibility of making the request, or if counsel unreasonably determined that Gant was ineligible for diversion.[3] But it is also possible that counsel had sound reasons not to pursue the issue. For example, it is conceivable that Gant expressed to counsel that he did not want mental health treatment, despite the possible benefits of diversion. (See 1001.36, subd. (b)(1) [listing diversion criteria including that the defendant "consents to diversion" and "agrees to comply" with treatment].) In such a circumstance, counsel reasonably could conclude that any request for the trial court to consider mental health diversion would be futile.

Gant cites *People v. Frahs* (2020) 9 Cal.5th 618, 640 for the proposition that a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted if "the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." This language from *Frahs*, however, addressed when remand is necessary to allow a defendant whose

---

[3] At trial, counsel expressed in passing that he did not "have" a "direct nexus or tie" between Gant's mental health issues and the conviction offenses. Gant argues on appeal that, nevertheless, he could have established that his mental disorder was "a significant factor in the commission of the charged offense," as required for mental health diversion. (See § 1001.36, subd. (b)(1)(C).) Counsel's comment, however, was made in the context of a discussion of mitigation factors to be considered during sentencing, and may or may not have anything to do with why he did not request Gant be considered for mental health diversion.

sentencing occurred before the mental health diversion statute was in effect to benefit from the statute's retroactive effect. It does not articulate a standard applicable to ineffective assistance of counsel claims, such as the one at issue here, arising from counsel's performance at a sentencing hearing conducted after the diversion statute took effect.

We decline to decide the merits of Gant's ineffective assistance claim here. The issue is better considered in a habeas corpus proceeding with a record developed for it.

B. *Equal Protection*

Gant was 24 years old when he committed the current offenses. Most offenders of that age would have a right to a youth offender parole hearing after 15, 20, or 25 years in prison, depending on their sentence. (§ 3051, subds. (a), (b).) Gant, however, is statutorily ineligible for a youth offender parole hearing because section 3051, subdivision (h) excludes those who were sentenced under the Three Strikes Law. Gant argues that this differential treatment violates equal protection.[4]

As Gant acknowledges, a similar argument was recently rejected in *People v. Wilkes* (2020) 46 Cal.App.5th 1159, 1164-1166. We agree with the reasoning in *Wilkes*

---

[4] Gant argues that we should consider his equal protection argument under the rubric of an ineffective assistance of counsel claim, to the extent it was forfeited by failure to raise it below. Gant did forfeit his equal protection claim by failing to raise it below. (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [equal protection claim forfeited for failing to raise it in the trial court].) Nevertheless, we find it most expedient to address the merits of this issue here, rather than on habeas, since there is no need to develop an evidentiary record to do so. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126 [exercising discretion to address forfeited issue to "forestall a petition for writ of habeas corpus based on a claim of ineffectual counsel"].)

6

and will follow it here: "Numerous courts have rejected equal protection challenges to the differential treatment of Three Strikes offenders, concluding that such offenders are not similarly situated to nonrecidivist offenders and/or that a rational basis exists to treat them differently." (*Id.* at p. 1165.) Even if we were to assume that a youth offender sentenced under the Three Strikes law "is similarly situated to other youth offenders for purposes of section 3051, the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' [citation]—presents too great a risk of recidivism to allow the possibility of early parole." (*Id.* at pp. 1165-1166.)

Gant's reliance on cases addressing other aspects of section 3051, subdivision (h) besides its treatment of young adult Three Strikes offenders is misplaced. For example, in *People v. Edwards* (2019) 34 Cal.App.5th 183, 199 (*Edwards*), the Court of Appeal held unconstitutional the portion of section 3051, subdivision (h) that excludes young adult offenders sentenced under the so called One Strike law (§ 667.61), which mandates a life sentence for certain sex offenses regardless of the offender's criminal history.[5] As noted in *Wilkes*, the constitutional infirmity identified as being the "'problem'" in

---

[5] The California Supreme Court took up the equal protection issue regarding young adults sentenced under the One Strike law after a different court of appeal declined to follow *Edwards* and held that "the threat of recidivism by violent sexual offenders . . . provides a rational basis for the Legislature's decision to exclude one strikers from the reach of section 3051. (*People v. Williams* (2020) 47 Cal.App.5th 475, 493, review granted July 22, 2020, S262229.) A panel of this court has, in a published opinion, followed *Williams* and declined to follow *Edwards*. (See *People v. Miranda* (2021) 62 Cal.App.5th 162.)

*Edwards* was "the categorical exclusion of 'an entire class of youthful offenders convicted of a crime short of homicide . . . , *regardless of criminal history*.'" (*Wilkes*, *supra*, 46 Cal.App.5th at pp. 1166-1167, quoting *Edwards*, 34 Cal.App.5th at p. 199.) *Edwards* is inapplicable in our context of a Three Strikes sentence, imposed precisely because of the offender's criminal history.

We are also not persuaded by Gant's discussion of authority analyzing whether certain sentences imposed against *juveniles* fall within the Eighth Amendment's prohibition against cruel and unusual punishment. As one of these cases notes, such authority "reflects the principle that 'children are constitutionally different from adults for purposes of sentencing'" in the Eighth Amendment context. (*People v. Contreras* (2018) 4 Cal.5th 349, 359.) It does not address the *equal protection* implications of Three Strikes sentences imposed against *young adults*.

Gant's arguments based on the concurring opinion in *In re Jones* (2019) 42 Cal.App.5th 477 are similarly unpersuasive. That concurrence raised, but ultimately did not answer, the question of whether section 3051's disparate treatment of young adult offenders serving sentences of life without parole (LWOP) and those serving non-LWOP sentences violates equal protection. (*In re Jones*, *supra*, 42 Cal.App.5th at pp. 485-486 (conc. opn. of Pollack, P.J.).) It did not consider whether young adult offenders sentenced under the Three Strikes law are similarly situated to other youth offenders without strike priors or, if so, whether excluding the one but not the other from early parole consideration is rationally related to a governmental objective.

8

We acknowledge Gant's broader point that section 3051 generally reflects a legislative judgment, consistent with other relatively recent developments in the law, that offenders who are adults but still young enough to have not yet fully developed neurologically at the time of their offense should have an opportunity to demonstrate rehabilitation at some point. Notwithstanding that trend, however, the Legislature could still rationally determine that young adult offenders who qualify for sentencing under the Three Strikes law "present[] too great a risk of recidivism to allow the possibility of early parole," even if that is not the case for young adult offenders generally, and even if it is not the case for all young adult offenders sentenced under the Three Strikes Law. (*Wilkes*, *supra*, 46 Cal.App.5th at p. 1166; see also *People v. Turnage* (2012) 55 Cal.4th 62, 77-78 ["A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends"].) There is of course room to argue about whether the place the Legislature chose to draw a line is the ideal one, but we have no grounds to find the line it drew arbitrary or irrational.

We find Gant has not demonstrated that section 3051's disparate treatment of young adults sentenced under the Three Strikes law runs afoul of constitutional equal protection principles.

C. Romero *Motion*

Gant contends that the trial court abused its discretion by denying his posttrial *Romero* motion.[6] We find no abuse of discretion.

---

[6] Gant's several pretrial *Romero* motions are not at issue here.

9

A trial court may dismiss a prior strike conviction under section 1385 "in furtherance of justice." (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529-530.) In considering whether to do so, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) There is a "'strong presumption that any sentence that conforms to [the sentencing norms established by the Three Strikes Law] is both rational and proper.'" (*In re Large* (2007) 41 Cal.4th 538, 550.)

We review the denial of a *Romero* motion for abuse of discretion. (*Williams, supra*, 177 Cal.4th at p. 162.) "'Under that standard an appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of [the] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1434.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he

10

commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Even serious but nonviolent recidivists presumptively fall within the letter and spirit of the three strikes law. (See, e.g., *People v. Romero*, *supra*, at p. 1434 [upholding sentence of 25 years to life for felony "nonviolent petty shoplifting offense" and affirming denial of *Romero* motion because of "seriousness" of defendant's criminal background].)

Here, the record demonstrates the court considered the relevant facts and arrived at a reasonable decision to deny Gant's *Romero* motion. Gant's three prior strike offenses, all of which were committed within months after he turned 18, did not involve acts of violence against a person.[7] Gant's lengthy juvenile criminal history, however, includes battery (§ 242), fighting in public (§ 415), assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)), and robbery (§ 211), and his current offenses are two robberies committed at gunpoint. Gant's current offenses were committed less than two months after he was released on parole from the prison term for his strike offenses. There is no substantial gap in Gant's criminal history; since his first juvenile offenses at age 12, he has repeatedly accumulated new charges as soon as he is released from

---

[7] The three strike priors were first degree burglary, carjacking, and unlawful taking or driving a vehicle with a gang enhancement. Gant pleaded guilty to all of those offenses on the same day in June 2011, but they were committed on different days during January and February 2011.

custody.  The trial court expressly considered the various mitigating factors raised, including Gant's age, what the defense described as the "brief period of duration" of his "criminal conduct as an adult," his disadvantaged background, his mental health history and struggles with addiction, and the relative seriousness of the crimes he committed in comparison to the length of the sentence he faced.  We find nothing arbitrary or irrational in the trial court's decision not to give those mitigating factors dispositive weight.

Gant proposes that the trial court did not exercise *informed* discretion because it was not aware of Gant's diagnosed mental health conditions as described in a competency report, ordered by a different judge earlier in the case.  Even assuming Gant is correct that the trial court was unaware of the competency report when it considered his *Romero* motion—a questionable proposition—we disagree with Gant's interpretation of the judge's comments.  The trial court did not express doubt as to Gant's mental health condition as described in the probation report, Gant's *Romero* motion, and at oral argument because of a lack of expert analysis or other corroboration.[8]  Rather, the trial court pressed the defense for evidence that drew a direct connection between defendant's mental health issues and the crimes he had committed.[9]  Defense counsel could not point

---

[8] According to the *Romero* motion, Gant self-reported that in the past he "has been diagnosed bipolar, placed on 5150 holds, and attempted suicide."  The motion also states that Gant was currently being treated with psychotropic medication while in jail.

[9] During oral argument on the *Romero* motion, after defense counsel mentioned that "there is some history of mental health issues that Mr. Gant has suffered . . ." the trial court asked the following question (twice interrupted by defense counsel commenting "Correct"; we have elided those comments here): "What do you think that the—if

*[footnote continued on next page]*

12

to anything in the record that would make such direct connection.[10] Moreover, the competency report Gant now emphasizes on appeal does not make any such direct connection. We are not persuaded that the trial court failed to consider any relevant factor in exercising its discretion regarding Gant's *Romero* motion.[11]

D. *Senate Bill 136*

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.) Effective

---

someone—there's an allegation that a person has some mental health issues, but obviously it's not a 1368 situation [...] or anything like that. What do you think that that in the sentencing guidelines is appropriate for the Court to consider? In other words, it's pretty hard when the Court doesn't really have a—you know, there's mention of mental health issues. I don't have much in the way of mental health expert analysis [...] and how that's related to crime or the crimes in this case. And so what is—I know you're throwing that out there. And that's fine, but what do you think is appropriate for the Court to do with that bit of information based on what I have?"

[10] Defense counsel responded that he did not have the wording of the "exact rule" in front of him, but would "submit" with the comment that "if there are mental health issues, it may go to the level of culpability[,] ultimately of the criminal culpability of the person if they are suffering from some kind of mental health issues. So obviously we are not to the far end of the spectrum where, you know, somebody is in an Atkins hearing type situation or 1368. But if somebody suffers from some mental health issues, it may go to, you know, their ability to think and reason not to make choices. And it cuts in mitigation towards their ultimate culpability or, you know, their criminal culpability. [...] So I don't have the—I may not have the direct nexus or tie that I think the Court may be referring to."

[11] For similar reasons, we find no merit in Gant's argument that his trial counsel provided ineffective assistance of counsel by failing to draw the court's attention to the competency report during consideration of the posttrial *Romero* motion.

13

January 1, 2010, Senate Bill 136 amended section 667.5, subdivision (b), to limit its prior prison term enhancement to only prior prison terms for certain sexually violent offenses. (§ 667.5, subd. (b).)

It is undisputed that Gant's prior prison term was not for a sexually violent offense. The parties also agree, as do we, that the amendments enacted by Senate Bill 136 apply retroactively to any case in which the judgment is not yet final on Senate Bill 136's effective date. (See *People v. Jennings*, *supra*, 42 Cal.App.5th at p. 682.) The section 667.5 enhancement found true and imposed against Gant, therefore, must be stricken.

The trial court did not previously sentence Gant to the maximum possible sentence, which would have been a total of 156 years to life. Nevertheless, the 80 years to life remaining after subtracting the one-year prison prior from Gant's original sentence is, for any practical purpose, functionally the same as the maximum sentence that could be imposed if we were to remand for resentencing. (See *People v. Burns* (1984) 158 Cal.App.3d 1178, 1184 [trial court entitled to reconsider entire sentencing scheme on remand, but may not sentence defendant to term in excess of original].) The People concede that in these circumstances remand for resentencing is unnecessary and we should simply strike the enhancement as Gant has requested. We will do so.

### III.  DISPOSITION

The judgment is modified to strike Gant's one-year prior prison term enhancement (§ 667.5, subd. (b)) pursuant to Senate Bill 136. In all other respects, the judgment is

affirmed. The clerk of the superior court is directed to prepare an amended sentencing minute order reflecting this court's order and an amended abstract of judgment reflecting Gant's new sentence totaling 80 years to life, and to forward certified copies of the minute order and abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

McKINSTER_____
Acting P. J.

FIELDS_____
J.